[Equitable Accident Ins. Co. v. Osborn.]

90 201
93 352

# Equitable Accident Insurance Co. *v.* Osborn.

*Action on Policy of Insurance against Accidents.*

1. *When sworn plea is necessary.*—In an action on a policy of insurance, a plea averring that "each and every allegation of said complaint is untrue," is not the general issue only, but is a denial of the execution of the policy by the defendant, and of the plaintiff's ownership, or right to sue as beneficiary: and it is demurrable, if not verified by affidavit. (Code, §§ 2676, 2770.)

2. *Vagueness and uncertainty in plea; statement of legal conclusions, instead of facts.*—A plea to an action on a policy of insurance against accidents, which avers that, "by the terms of said policy, the payments of premiums are for consecutive periods of two, three, and five months; that each shall apply only to its corresponding insurance period; that all claims for injuries effected during any period, for which its respective premium had not been actually paid, shall be forfeited to the company; and defendant avers that the premium for the insurance period during which the insured was killed, has not been paid,"—is demurrable for vagueness and uncertainty, and also because it states legal conclusions instead of facts.

3. *Same.*—So, also, a plea is demurrable for the same causes, which avers that, "by the terms of said policy, all statements and declarations in the application for said insurance are warranted to be true in all respects, and if any statements in said application are false, then said policy shall be void; and defendant avers that each statement in said application, severally and separately, and the said application as a whole, is false."

4. *Variance in description of policy.*—Where the policy sued on, a policy of insurance against accidental injuries or death, is described in the complaint as running for the term of one year from its date, a policy of the same date, which does not specify any term, except that the person is insured "for the period or periods specified below, in the sum of not exceeding $6.00 per week, against total loss of time, not exceeding 52 consecutive weeks," is not admissible as evidence, being materially variant from that described.

5. *Policy construed as to death or injuries from "external, violent, and accidental means."*—A recovery may be had on a policy of insurance against bodily injuries, or death, "effected through external, violent, and accidental means," when the evidence shows that the insured, running rapidly from the post-office, fifty yards distant, to get the mail for the post-master from a railroad train which was fast approaching, and which did not stop at that station, attempted to check his speed on getting near the train, but stumbled and fell against the steam-chest of the engine, receiving fatal injuries.

6. *Same; exceptions as to "intentional injuries," "voluntary exposure to unnecessary danger," and "walking or being on railway road-bed."*—On the facts last above stated, the death of the insured was not within any of the exceptions contained in the policy against "intentional injuries," "voluntary exposure to unnecessary danger" (although he was not in the employment of the post-master, but voluntarily offered to get the mail for him), and "walking or being on a railway road-bed."

[Equitable Accident Ins. Co. v. Osborn.]

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by Mrs. Laura Osborn, widow and administratrix of the estate of John Osborn, her deceased husband; and was commenced, as the summons and complaint are copied in the transcript, on the 21st November, 1888 (?) The action was founded on a policy of insurance against accidents, issued by the defendant to said John Osborn, which was dated February 18th, 1888. The complaint alleged that said John Osborn died on the 30th May, 1888; but the evidence adduced on the trial, as copied in the bill of exceptions, shows that he died on the 30th May, 1889. The complaint alleged, also, that the policy insured his person and life against accidents, "for the term of one year from its date."

The defendant filed seven pleas, namely: (1.) "For answer to said complaint defendant saith, that each and every allegation thereof is untrue." (2.) "That defendant did not promise, in manner and form as stated in said complaint." (3.) "That by the terms of said policy, the payments of premiums are for consecutive periods of two, three, and five months; that each shall apply only to its corresponding insurance period; that all claims for injuries effected during any period for which its respective premium had not been paid, shall be forfeited to the company; and defendant alleges that the premium for the insurance period during which the insured was killed, has not been paid." (4.) "That by the terms of said policy, all statements and declarations in the application for said insurance are warranted to be true in all respects, and if any statements in said application are false, then said policy shall be void; and defendant avers that each statement in said application, severally and separately, and the said application as a whole, is false." (5.) That by the terms of the policy, suicide, intentional injuries, death resulting, directly or indirectly, from voluntary exposure to unnecessary danger, or walking or being on the road-bed of a railway, &c., are excepted; and that the death of the deceased resulted from one or another of these several causes, stating them disjunctively. (6.) That proof of death was not furnished within ninety days, as required by the terms of the policy. (7.) That defendant had never received satisfactory proof of death, as required by the terms of the policy. The court sustained a demurrer to the first plea, because it was not verified by affidavit; and to the third and fourth each, (1) because its averments were vague, indefinite and uncertain, and (2) because it stated legal conclusions instead of facts. Issue was joined on the other pleas, and the cause was submitted to the decision of the court without a jury.

[Equitable Accident Ins. Co. v. Osborn.]

On the trial, the plaintiff offered in evidence "a copy" of the policy sued on, which was dated February 18th, 188–, and in these words: "Equitable Accident Insurance Company, in consideration of the representations, agreements and warranties made in the application for this policy, and of an order (for moneys therein specified) on the A. G. S. R. R. Co., does hereby insure (subject to the conditions on the back hereof, not waivable by agents) *John Osborn*, the identical person named and described in said application, for the period or periods specified below, beginning at noon of the day this policy is dated, under classification *M*, in the sum of not exceeding six dollars per week, not to exceed the money value of his time, against total loss of time, not exceeding fifty-two consecutive weeks, resulting from bodily injuries effected during the term of this insurance through external, violent, and accidental means, which shall, independently of all other causes, immediately and wholly disable and prevent him from transacting any and every kind of business pertaining to the occupation under which he is insured; or, if loss of one entire hand or foot shall result from such injuries alone, within ninety days, will pay the insured one-third of the principal sum herein named, in lieu of said weekly indemnity; or, if death shall result from such injuries alone, within ninety days from the happening thereof, will pay $500 to Laura Osborn, his wife, if surviving; and in the event of her prior death, to the legal representatives or assigns of the insured; said payments for disability or death to be made within ninety days after the receipt of satisfactory proofs of such disability or death. This policy is insured (*issued?*) by the company, and accepted, upon the express conditions and agreements set forth on the back hereof, which shall constitute a part of this contract in the same manner and to the same extent as if they were printed in the body hereof," &c. The following are among the "agreements and conditions" printed on the back of the policy: "It is expressly agreed, that this insurance does not extend to or cover . . . accident, death, loss of limb, resulting wholly or partly, directly or indirectly, from any of the following causes: . . intentional injuries, inflicted by the insured or any other person; voluntary exposure to unnecessary danger, unless in an effort to save human life; walking or being on a railway bridge or road-bed, railway employès excepted. And in the event suit should be brought under this policy, the burden shall be upon the claimant to establish that the injury or death was the result of accidental causes covered by this policy."

The defendant moved to exclude the policy as evidence, "on

the ground that there was a fatal variance from the complaint;" and excepted to the overruling of the motion. "The plaintiff then proved that she is the widow and administratrix of said John Osborn, and that he met his death, on the 30th May, 1889, under the following circumstances. Deceased had been a section hand on the A. G. S. R. R. at Hillman, Ala., and was so employed by said company at the time of his death, but was off duty that day. He was at the open window of the post-office, about fifty yards from the railroad track, when the coming mail train whistled; asked the postmaster if he should bring in the mail when it was thrown from the train, and, being told to do so, ran rapidly towards the railroad track. As he started, the train was about one hundred and fifty yards south of the point where his path would cross the track, and was approaching at the rate of fifty miles an hour. The track could be plainly seen for a distance of half a mile on each side, and was straight; and there was no obstruction to the view. There was a side-track, of the usual width, between the main track, on which the train was moving, and the post-office. It was very near the main track—just far enough to prevent the cars on one from striking cars on the other. The path of deceased went down a small sloping bank to the side-track. As he ran towards the track, and just as he reached the sloping bank which led down to the side-track, he slackened his speed, and was going in a trot, and at the bank made an effort to check his speed; but, when he got on the side-track, still trying to check his speed, he stumbled, and fell on to the engine just then passing, struck against the steam-chest on the side of the engine, and was killed. Hillman was only a flag-station, and the train did not stop there. The mail-grab, or post from which the mail was taken into trains, was on the side of the track opposite the post-office, and the mail delivered from the train was thrown to the ground on the side of the track; but there was no necessity for the deceased, or any one else, being on that side when the mail was thrown off. It was not customary for any one to catch the mail, but it was thrown to the ground, and picked up afterwards. Plaintiff proved, also, that proof of death was made within the time required by the policy, and that the premiums were paid according to the terms thereof."

"This was all the evidence, and the court thereupon gave judgment for the plaintiff; to which defendant excepted." The judgment of the court, and its rulings on the pleadings and evidence above noted, are now assigned as error.

[Equitable Accident Ins. Co. v. Osborn.]

G. R. HARSH, and BOWMAN & HARSH, for appellant, cited *Shaffer v. Travellers' Insurance Co.*, 22 N. E. Rep. 589; *Wilson v. Standard L. & A. Insurance Co.*, in U. S. Court at Atlanta, Dec. 5, 1889; *Tuttle v. Travellers' Insurance Co.*, 134 Mass. 175; *Travellers' Ins. Co. v. Jones*, 7 S. E. Rep. 83; *Shrader v. Passengers' Ins. Co.*, 166 N. Y. 441.

E. T. TALIAFERRO, *contra*.

SOMERVILLE, J.—1. The first plea of the defendant being a general denial of all the allegations of the complaint, necessarily put in issue the execution of the written policy of insurance which was the foundation of the suit, as well as the plaintiff's ownership of the policy, as the beneficiary under it. The plea should, therefore, have been supported by affidavit; and for want of such verification it was subject to the demurrer, which was interposed to it and was properly sustained by the trial court.—*Mobile & Montgomery Railway Co. v. Gilmer*, 85 Ala. 423; Code, 1886, §§ 2676, 2770; *Manning v. Maroney*, 87 Ala. 563.

2. The third plea was too vague and uncertain in its averments, and, therefore, necessarily ambiguous in meaning. It, moreover, states legal conclusions instead of facts, and was subject to demurrer on these and other grounds, sustained by the court.—*Carmelich v. Mims*, 88 Ala. 335.

3. The fourth plea was subject to like objections, as stated in the demurrer to it.

4. The court erred in not sustaining the plaintiff's motion to exclude the policy of insurance, on the ground of variance. The complaint describes the policy as running for the term of one year from date, which was Feburuary 18th, 1888. We discover nothing in the terms of the policy, or in the other evidence, which indicates how long the risk was to run. This may be an inadvertent omission; but, as the bill of exceptions purports to contain all the evidence, the objection to the admission of the policy should have been sustained. In addition to this we may observe, that the evidence shows that the accident, which produced the death of the insured, happened on May 30th, 1889, or more than a year after the issue of the policy, and the risk was not therefore covered by the time for which the policy described in the complaint was to remain in force. This, of itself, is fatal to any recovery, as the facts of the case now stand.

5. The policy insures against death and certain other injuries, effected through "external, violent, and accidental means." That the death of the insured resulted from precisely

such a cause, the evidence leaves no doubt. The insured came speedily to his death by stumbling and falling, as he ran towards the railroad track upon the approach of a passenger train, coming in sudden contact with the steam-chest on the side of a railway engine. The injury, therefore, comes within the general terms of the policy, unless taken out by some one of the exceptions.

6. One of the exceptions, not covered by the policy, is "voluntary exposure to unnecessary danger." It is contended that the facts of the present case bring it within the terms of this exception. The phrase—"voluntary exposure to unnecessary danger"—involves the idea of "intentionally doing some act which reasonable and ordinary prudence would pronounce dangerous." As said in an analogous case, where the same phrase was construed: "The approach to an unknown and unexpected danger does not make the act a voluntary exposure thereto. The result of the act does not necessarily determine the motive which prompted the action. The act may be voluntary, yet the exposure involuntary. The danger being unknown, the injury is accidental."—*Burkhard v. Traveller's Ins. Co.*, 102 Penn. St. 262; 48 Amer. Rep. 205.

Death by accident has been defined to be "death from any unexpected event which happens as by chance, or which does not take place according to the usual course of things;" *North Amer. Ins. Co. v. Burroughs*, 69 Penn. St. 43; and again, as "any event which takes place without foresight or expectation of the person acted upon or affected by the event."—May on Insurance (2d Ed.) § 520. So it is said in 1 Amer. & Eng. Encyc. Law, p. 87: "An accident, in its application to insurance policies, has been defined as an injury which happens by reason of some violence, casualty, or *vis major* to the assured, without his design, or consent, or voluntary co-operation."—See, also, *Schneider v. Providence Life Ins. Co.*, 1 Amer. Rep. 157; *Tuttle v. Traveller's Ins. Co.*, 45 *Ib.* 316-19, note.

The evidence in the record fails to satisfy us that the insured was guilty of voluntary exposing himself to unnecessary danger, and any degree of negligence short of this will not operate to defeat a recovery.—May on Insurance (2d Ed.), § 530. He was approaching the arriving railway train, for the purpose of getting the mail for the post-master. True, he was moving rapidly. But he made an effort to check his speed, as he reached the sloping bank which led down to the side-track of the railroad; and in doing this, he stumbled, and came in collision with the engine. But for the accident of stumbling, the inference is fair that he would not have been injured. The efficient and proximate cause of the death, therefore, was the

accident, as much as if the collision had been with a huge stone, instead of with the steam-chest on the side of the engine.

The injury received was clearly not "intentional" within the meaning of one of the exceptions of the policy. Nor, in our opinion, can it be properly construed to be a "walking or being on a railroad bridge or road-bed," within the meaning of another excepted class of cases contained in the policy, as is contended for by the appellant. Exceptions of this kind are construed most strongly against the insurer, and liberally in favor of the insured. This is now the settled rule for construing all kinds of insurance policies, rendered necessary especially in modern times to circumvent the ingenuity of insurance companies in so framing contracts of this kind as to make the exceptions unfairly devour the whole policy. Accordingly, in *Wright v. Sun Mutual Life Ins. Co.*, 29 Upper Canada C. P. Rep. 221 (1878), a well considered case of insurance against accidents, it was held that using a railroad track merely to cross a street, through which it ran, was not a "walking on the track" within the meaning of a prohibition of the policy, for accidents resulting from which no liability was to be incurred. A fair and reasonable construction of the phrase in question is, voluntarily and intentionally being or walking on the railway road-bed, not being there by force of accident and involuntarily, for a mere comparative moment of time.—*Burkhard v. Traveller's Ins. Co.*, 48 Amer. Rep. 205; *Schneider v. Traveller's Ins. Co.*, 46 Amer. Rep. 618; 1 Amer. & Eng. Encyc. Law, 92.

These principles will be sufficient, without more, to enable the court below upon another trial to reach a proper conclusion.

Reversed and remanded.