# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## THE FIDELITY & CASUALTY CO. v. CHAMBERS AND ANOTHER.

### APRIL 23, 1896.

1. DEMURRER TO EVIDENCE—*Motion for New Trial.*—Upon a demurrer to the evidence it is not necessary to move for a new trial in the trial court in order to review the judgment in the appellate court. *Norfolk & Western R. Co.* v. *Dunnaway's Adm'r. Ante, p. 29.*

2. DEMURRER TO EVIDENCE—*Rule Stated.*—By a demurrer to evidence the party demurring is considered as admitting the truth of his adversary's evidence and all just inferences which may be drawn therefrom by the jury, and as waiving all of his own evidence which conflicts with that of his adversary, and all inferences from his own evidence (although not in conflict with his adversary's) which do not necessarily result therefrom.

3. INSURANCE—*Payment of Premium—Possession of Policy.*—The possession of a policy of insurance is sufficient evidence of the payment of the premium thereon, on a demurrer to the evidence by the insurance company.

4. INSURANCE POLICY—*How Construed—Exceptions Therein.*—Accident insurance policies are to be construed like other contracts, and words of exception therein are to be construed most favorably to the insured.

5. INSURANCE—*Accident Policy—Deafness—Bodily Infirmity.*—Deafness will not avoid a policy of insurance " against injuries received in a consequence of bodily infirmity," in the absence of evidence that such deafness in any way contributed to the injury.

6. INSURANCE POLICY—" *Voluntary Exposure* "—*Danger—Contributory Negligence.*—The words " voluntary exposure " in an accident insurance policy, imply *conscious, intentional exposure*—something which one is willing to take the risk of. The exposure must be to what reasonable and ordinary prudence would pronounce dangerous, and the accident complained of must have been in consequence thereof. Whether, in a given case, the conduct of the insured has been such as to preclude a recovery is for the jury, under all the circumstances of the case, to determine, or upon a demurrer to the evidence, for the trial judge. Contributory negligence on the part of the insured will not prevent a recovery.

Error to a judgment of the Circuit Court of Greenesville County, rendered October 21, 1893, in an action of *assumpsit* wherein the defendants in error were the plaintiffs, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Cabell & Cabell* for the plaintiff in error.

*Turnbull & Goodwyn,* for the defendants in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Greenesville county upon a demurrer to the plaintiffs' evidence, the jury having ascertained the plaintiffs' damages at $2,000.00, the amount covered by the insurance policy sued on, and the defendant in error moves to dismiss the writ of error as improvidently awarded, upon the ground that the record does not show that there was a motion for a new trial in the court below.

This is not an open question in Virginia. It was raised and determined in the case of the *Norfolk & Western R. Co.* v. *Dunnaway's Admr.*, decided at the present term, *ante p.* 29, wherein it was held: "That there is no necessity for a motion for a new trial in the trial court in order to have a judgment on a demurrer to evidence reviewed in this court."

It is also insisted by counsel for defendants in error that, in addition to the rule governing where there is a demurrer to plaintiffs' evidence, the evidence introduced by the defendant in the court below in support of its defence based upon the ground of a violation of the conditions or restrictive provisions in the policy, should not be considered, as this evidence does not first make it appear that the conditions or restrictive provisions in the policy sued on, are in the print required by section 3252 of the Code, or written with pen

and ink in or on the policy. This section provides: "In any action against an insurance company or other insurer, founded upon a policy of insurance issued after the first day of July, 1878, no failure to perform any condition of the policy, or violation of any restrictive provision thereof, shall be a valid defence to such action, unless it appears that such condition or restrictive provisions is printed in type as large or larger than that commonly known as long primer type, or is written with pen and ink in or on the policy."

This presents to this court an entirely new question of great importance, which the record does not show to have been raised in the trial court; and as it has not been fully argued, and as the judgment of the lower court must be affirmed on the merits of the case, it is not necessary to decide it, and we therefore express no opinion on that question.

At the trial, the plaintiffs introduced in evidence the policy of insurance sued on, and then proved by parol testimony that the insured, L. A. Kirkland, was struck and killed by a locomotive of the A. & D. R. R. Co. on the 23rd of December, 1891, and in rebuttal examined witnesses to show that the representations in the application for the insurance, alleged by defendant to have been false, were in fact not false, and that the accident by which the deceased lost his life was not caused by his intoxication, or the result of the use of intoxicants, or from voluntary exposure to unnecessary danger.

The defendant insurance company sought by its testimony to make defence to the action upon the grounds that the insured made false representations in his application for the insurance; second, that the insurance premium on which the policy was issued had not been paid; and third, that the insured had sustained the injury in consequence of the violation of certain conditions or restrictive provisions in the policy, or that it was caused by his intoxication, or was the result of the use of intoxicants.

By a demurrer to the evidence the party demurring is considered as admitting the truth of his adversary's evidence, and all just inferences which can be drawn therefrom by the jury, and as waiving all of his own evidence which conflicts with that of his adversary, and all inferences from his own evidence (although not in conflict with his adversary's) which do not necessarily result therefrom. *Johnson's Adm'r* v. *C. & O. R'w'y Co.*, 91 Va. 171, and authorities cited.

The plaintiffs' evidence made out their case, and we will consider the defence made by the defendant, subjected to the well established rule just stated. Was the premium paid? We are of opinion that this defence cannot avail, because of the fact that at the time of the accident the insured had in his possession the policy of insurance, and the possession of it is such evidence of the payment of the premium as upon a demurrer to evidence is conclusive upon the court. Beyond this, it was agreed that if Inman, the agent of the Insurance Company, who issued the policy, and who had been summoned as its witness, had been present, he would have testified that he delivered the policy to Wiley Jones, to be delivered to Kirkland *when he paid for it, and only then.* The defendant not only did not introduce Wiley Jones as a witness, but did not account for his absence.

The representations in the application for the insurance alleged to have been false, are: " My habits of life are correct and temperate," and " I am in sound condition, mentally and physically." The first, as it appears in full in the application is: " My habits of life are correct and temperate, and I understand that the policy will not cover any accidental injury which may happen to me either while under 'the influence of intoxicating drinks, or in consequence of my having been under the influence thereof."

Policies of this character are contracts to be construed like other contracts, and words of exception contained

therein are to be given the construction most favorable to the insured.   *U. S. Mut. Acc. Ins. Co.* v. *Newman,* 84 Va. 52; A. & E. Enc. Law (2d Edn.), 286, and notes.

The evidence of the defendant, if given its full force and effect, does not show that the insured was drunk at the time of the accident.   It does show that he would take a drink, and had taken drinks that morning, but it does not even tend to show that the accident was in consequence of his intoxication, or as the result of drinking, nor that the injuries were received in consequence of "bodily infirmity."

In the case of *Prador* v. *Nat'l Masonic Acc. Ass.,* 63 N. W., Rep. 601, the evidence was that the deceased left home sober, with two friends, and they drank from a quart bottle of whiskey, of which some was left when they returned; that the deceased then drank two glasses of wine, and soon after was injured by slipping into a hole, and it appeared that those in whose company he was considered him sober.   It was held (Sup. Court of Iowa) that the evidence did not show that the deceased was injured while under the influence of intoxicating liquors.   See also *Travellers Ins. Co.* v. *Harvey,* 82 Va. 949; *Standard L. &c., Ins. Co.* v. *Jones,* 94 Ala. 434.

Plaintiffs' witnesses, who saw deceased but a short while before he was killed, say that he was not drunk, and, although one of the witnesses helped him on the cars, it was not because he was drunk, but because he was sick and weakly.   He had spoken to one of the witnesses of going to see a doctor "about his throat, or the grippe."   W. S. Goodwin testified that the deceased was in his law office but a short while before the accident, and was sober at that time.

Even where evidence of intoxication is conflicting, the decision of the lower court must be sustained.   *Sutherland* v. *Standard L. & Acc. Ins. Co.* (Iowa Sup. Ct.) 54 N. W. 453.

The only evidence in the record as to "bodily infirmity" consists of the statements of some of the witnesses that he

was " quite deaf—didn't hear well." We do not think this question enters seriously into the consideration of this case. The provision in the policy is that the insurance company shall not be liable for "injuries received in consequence of bodily infirmity," and there is not the slightest testimony in the record to show that the injury was so received.

The policy held by the deceased insured him "against bodily injuries sustained through external, violent, and accidental means." That the insured came to his death "through external, violent, and accidental means" is not questioned, and it only remains to be determined whether the evidence brings the case under the exception in the policy, which provides that it does not cover injuries caused by "voluntary exposure to unnecessary danger." The words "voluntary exposure," as used in an accident insurance policy, imply conscious, intentional exposure— something which one is willing to take the risk of. It must appear that the act, in order to come within the exception, was one which reasonable and ordinary prudence would pronounce dangerous, and that the accident was in consequence thereof. It is consequently not every act of negligence which will defeat a recovery under such a provision, and in general the question whether the conduct of the insured is such as to preclude a recovery is for the jury under all the circumstances of the case, and where there is a demurrer to evidence, as in this case, for the trial judge. A. & E. Enc. L. (2d Ed.) pp. 337-8, and cases cited in notes 5 and 6, p. 307, and notes 1 and 2, p. 308.

The only evidence upon this point is that of Fanny Hill (colored), a witness introduced by the defence. She says that she was talking to deceased in the county road where the railroad track crosses it; he was sitting on a bag, and on the railroad track, with his back up the railroad. The train came down around the curve, when she hallooed to him, and he started off, but reached to get his bag, and as

he reached to get it the engine struck him in the left side of the back. The train was coming so fast around the curve that it was as much as she could do to get out of the way herself. There is not the slightest evidence to show that the deceased knew that a train would be along at or near that time, nor that he had good reason to know it. The fact that he immediately got off the track when apprised that the train was coming, negatives the idea of conscious, intentional exposure to danger. The most that can be made of this evidence is that the deceased, in thinking that he had time to get his bag off the railroad track, was simply mistaken.

In the case of *Eq. Acc. Ins. Co.* v. *Osborn,* 90 Ala. 201, the court held that a recovery may be had on a policy of insurance against accidental injuries, or death, " effected through external, violent, and accidental means," when the evidence shows that the insured, running rapidly from the post-office, fifty yards distant, to get the mail for the postmaster from a railroad train which was fast approaching, and which did not stop at the station, attempted to check his speed on getting near the train, but stumbled and fell against the steam chest of the engine, receiving fatal injuries; although the insured was not in the employ of the postmaster, and volunteered to get the mail from the train, and although there were exceptions contained in the policy against "intentional injuries" and "voluntary exposure to unnecessary danger."

Somerville, J., in his opinion, says: "Exceptions of this kind are construed most strongly against the insurer, and liberally in favor of the insured. This is now the settled rule for construing all kinds of insurance policies, rendered necessary, especially in modern times, to circumvent the ingenuity of insurance companies in so framing contracts of this kind as to make the exceptions unfairly devour the whole policy."

The fact that a person insured against injury or death by accident was guilty of negligence which contributed to an injury received by him, will not prevent a recovery on the policy. *Schnieder* v. *The Prov. L. Ins. Co.*, 14 Wis. 28.

It should be borne in mind that this is not a suit against the railroad company where the question of contributory negligence would come in. If every negligent or careless act of the insured from which accident results without "conscious, intentional exposure" on his part, is to be made to serve as a defence to an action on the policy, policies of this character would become of little utility.

We are of opinion that there is no error in the judgment of the Circuit Court, and it is therefore affirmed.

*Affirmed.*