# CHARLESTON.

Submitted June 6, 1908.   Decided February 16, 1909.

## DIDDLE *v.* CONTINENTAL CASUALTY CO.

1. INSURANCE—*Accident*—*"Voluntary Exposure" to Unnecessary Danger.*

   Either reckless or deliberate encountering of known danger, or danger so obvious that a reasonably prudent man would have observed and avoided it, if the circumstances were not such as necessitated the encountering thereof, is a voluntary exposure within the meaning of a clause in an accident insurance policy, limiting the liability of the insurer in case of an injury resulting from "voluntary exposure to unnecessary danger or obvious risk of injury." (p. 174.)

2. SAME.

   Unconsciousness of the danger at the moment of injury does not excuse the insured, except in those instances in which he

was ignorant of the danger and under no duty, from the obviousness thereof, to know its existence. (p. 175.)

3.  SAME.

    If the danger is obvious and there is nothing in the situation of the insured or the circumstances surrounding him, that in any way precludes deliberation, freedom of action or choice of conduct, such as a sudden peril, which he had no reason to expect, or the like, and he encounters it, and is injured, the exposure is voluntary. (p. 176.)

4.  SAME.

    In an issue raised under such a clause, the rights of the parties are fixed and determined by the contract, not the law of negligence, but certain general principles, operative alike in controversies arising *ex contractu* and *ex delicto*, have application and, of these, some are recognized in the law of negligence. (p. 175.)

5.  STATUTES—*Construction—Penal Statutes.*

    Penal statutes are strictly construed. (p. 177.)

6.  RAILROADS—*Operation—Jumping On or Off Trains.*

    Section 4282, Code of 1906, making it criminal for persons, not passengers or employes of railroads, to jump on or off of railway engines, cars or trains, does not inhibit such conduct in an employe of a railroad company, whose duties are confined to work in its shops, and do not require him to go upon or about its engines, cars or trains when in use on its tracks or yards. (p. 177.)

7.  TRIAL—*Direction of Verdict.*

    On a motion therefor, a trial court should direct a verdict when the evidence is insufficient to sustain one different from that which the court is asked to direct. (p. 177.)

8.  SAME—*Instructions—Matters Not Supported by Evidence.*

    An instruction not founded upon evidence, that is, one embodying a proposition the evidence does not tend in an appreciable degree to support, should not be given. (p. 179.)

9.  SAME—*Instructions—Ignoring Evidence.*

    In an action on a policy of insurance, in which the defense is predicated on a clause limiting liability, when the injury has resulted from voluntary exposure to unnecessary danger or obvious risk, instructions, ignoring many important facts, disclosed by the evidence, and telling the jury they may find for the defendant, if they believe the insured did certain isolated acts, which would not in themselves, under all circumstances, make out, in law, a good defense under such a clause, are properly refused. (p. 177.)

Error to Circuit Court, Cabell County.

65 W. Va.

Action by Lydia Diddle against the Continental Casualty Company. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

CAMPBELL, HEFFLEY & DAVIS and MANTON MAVERICK, for plaintiff in error.

ISBELL & PERRY, for defendant in error.

POFFENBARGER, JUDGE:

Thomas D. Diddle, insured for the benefit of his wife, Lydia Diddle, in the Continental Casualty Company, for $2,000.00, was struck by a railway water column, while riding on a railway engine, and killed. His wife brought this action on the policy and recovered a judgment for the sum of $2,049.30. The defense was predicated on a limited liability clause in the policy, reading as follows: "Where the accident or injury results from voluntary exposure to unnecessary danger or obvious risk of injury, or from the intentional act of the Insured or of any other person; * * * or (2) where the accidental injury results from or is received while quarreling, fighting or violating the law; * * * then and in all cases referred to in this Part III, the amount payable shall be one-tenth of the amount which otherwise would be payable under this policy, anything in this policy to the contrary notwithstanding, and subject otherwise to all the conditions in this policy contained." Deeming this clause applicable and controlling, under the circumstances attending the death of the assured, the insurance company tendered the beneficiary $200.00, one-tenth of the amount of the policy, less $20.00, due it on account of unpaid premium, which she refused.

There is practically no controversy as to the facts. The main question is whether the court can say, as matter of law, on the admitted or established facts, the death of the insured resulted from voluntary exposure to unnecessary danger or obvious risk of injury, or occurred while he was violating law, and this is raised by exceptions, based on the giving of instructions for the plaintiff, refusal of instructions requested by the defendant and the overruling of a motion to direct a verdict for the defendant and a motion to set aside the verdict.

The following facts are disclosed by the evidence: The insured was a car-repairer in the shops of the Chesapeake and Ohio

Railway Company at Huntington. In the evening of the day he was killed, after the completion of his work, he came out of the shop, walked down the railway track in a westerly direction a short distance, passing the water column, standing midway between two railway tracks, about nine feet apart, and stepped on one of two engines, drawing a train of cars over a switch from the west bound track to the east bound track, as he had often done before. Instead of getting into the cab of the engine, he stood on a step on the outside, holding to a hand-grip, while his body projected or swung from the side of it, and was riding in that way, or he was in the act of climbing into the cab and before he had accomplished it, the engine came to the water column and his body came into violent contact with it. Lest inaccuracy, frequently incident to attempted generalization, may have crept into the preceding sentence, we quote the testimony, detailing the circumstances of the accident. W. F. Adkins, a workman in the shop, said: "Well, the first place that I saw Mr. Diddle, or, they told me afterwards it was Mr. Diddle—I did not know the gentleman at the time—he was between the north—no, the west, bound track and the east bound track of the Chesapeake and Ohio—this side, that is, on the south side of the Huntington shops—he got on the engine—double-head, as we say (I suppose you gentlemen know what is meant by double-head—running two engines together), well he got on the first engine and was climbing upon the tank—between the engine and the tank, and the water column with the water—where the engines take on water, struck him in the back of the head and knocked him off—struck him and he rolled just past the post and fell and the main rod of the second engine crushed his head against the ground, which caused his death." On cross-examination, he said the deceased had boarded the engine about sixty feet from the water column; he had put one foot on the first step and raised the other to place it on the next one; he was looking back, supposedly to see other men climb on; when struck, he had had time enough, in the opinion of the witness, to have gotten into the cab if he had not stopped to look back; he was holding to the hanger on the tender and leaning out so that the water column, twenty or twenty-four inches from the engine, struck him. Charles R. Wilson, Chief Clerk at the railway shops, said: "Well, the shop whistle had blown and about 5:40 I was

coming out of the gate, preparatory to catching a street car to come home. There was a train,—a freight train coming along—a double header, and I stopped to permit it to pass. Looking down the track, I saw a man lying on the ground, just as if he had fallen—I saw him fall—and the rod came over and struck him in the head and his feet flew up and nearly touched the train and he dropped down and was dead. Before I went to where the man was lying, I stept across over in front of the train and signaled the engineer to stop, and then went back in front of the engine and on around where the man lay." Witnesses say there was a rule of the railway company, forbidding employes from boarding moving trains and riding on them to and from their work, but, since the passage of the statute making it unlawful to jump on moving trains, the rule had not been insisted upon. As a matter of fact, the employes did frequently, if not generally, board moving engines and trains at or near the shops just as the deceased did on this occasion. There were others on the same engine at the time he was hurt. The train was moving at the rate of about ten miles an hour when he boarded it. As to some of these matters, there may be some contradiction in the testimony, but none, it is believed, as to the more material facts.

While the case is one of first impression in this state, the clause in question is, and has been, in general use by insurance companies for a long time, and its construction is thoroughly settled by numerous decisions in other jurisdictions. A voluntary exposure to necessary danger is not forbidden by it. *Keene* v. *New England Accident Ass'n,* 161 Mass. 149. A merely inadvertent and unintentional exposure to a known danger, under peculiar circumstances, not affording opportunity for deliberate action, is an involuntary, not voluntary, exposure. *Keene* v. *Accident Ass'n,* cited; *Casualty Co.* v. *Chambers,* 24 S. E. 896; *Insurance Co.* v. *Osborn,* 90 Ala. 201. Exposure to an unknown danger, though a voluntary act, is not a voluntary exposure. *Miller* v. *Insurance Co.,* 92 Tenn. 167 (20 L. R. A. 765) ; *Carpenter* v. *Accident Co.,* 46 S. E. 541; *Johnson* v. *Accident Co.,* 115 Mich. 86 ; *Burkhard* v. *Insurance Co.,* 102 Pa. 262; *Deloy* v. *Insurance Co.,* 171 Pa. 1. Either reckless or deliberate encountering of known danger, or danger so obvious that a reasonably prudent person ought to have known it at the time of encountering it, is universally held to be voluntary exposure within the meaning of

this clause. *Garcelon* v. *Accident Ass'n*, 81 N. E. 201; *Willard* v. *Accident Ass'n*, 47 N. E. 1006; *Smith* v. *Ins. Co.*, 69 N. E. 1059; *Conboy* v. *Accident Ass'n*, 43 N. E. 1017; *Insurance Co.* v. *Jones*, 80 Ga. 54; *Tuttle* v. *Insurance Co.*, 134 Mass. 175; *Rebman* v. *Insurance Co.*, 10 L. R. A. (N. S.) 957; *Alter* v. *Cas. & Sur. Co.*, 83 S. W. 276; *Follis* v. *Accident Ass'n*, 28 L. R. A. 78; *Cornish* v. *Insurance Co.*, 23 L. R. Q. B. D. 453.  These decisions emphasize the duty of exercising some degree of care and prudence, in view of obvious danger, even though the insured did not at the moment of injury realize it, or was not actually conscious of it, as well as that of avoiding known danger by the exercise of prudence and care, and deny to the beneficiary of the policy the right to take the opinion of the jury as to whether the insured was actually conscious of it, at the moment of the injury or of the action from which it resulted.  They proceed upon that principle of the law which estops a man from saying he did not see or hear that which he must have seen or heard, if he had given his action and the surrounding circumstances that degree of attention, which prudence and a due regard for his own safety and the rights of others require.  This Court has frequently applied it in negligence cases. *Slaughter* v. *Huntington*, 64 W. Va. 237 (61 S. E. 154); *Reidel* v. *Traction Co.*, 63 W. Va. 522; *Van Pelt* v. *Clarksburg*, 42 W. Va. 218; *Hesser* v. *Grafton*, 33 W. Va. 548; *Moore* v. *Huntington*, 31 W. Va. 849; *Phillips* v. *County Court*, 31 W. Va. 480.  While the rights of the parties here are governed by the contract and not by the legal rules and principles of the law of negligence, there are certain general principles common to many branches of the law, and operative in the determination of the rights of parties whether they arise *ex contractu* or *ex delicto*.  Though, perchance, the insured may recover on a policy of this kind, when the circumstances would deny relief under the law of negligence, since this clause does not contemplate such exposure as is incident to the ordinary habits and customs of life, *Accident Ind. Co.* v. *Dorgan*, 22 L. R. A. 620, it is nevertheless well settled that he must exercise at least ordinary care, and failure to do so is negligence in a case, determined by the law of negligence. Many of the decisions assert that knowledge of the danger and consciousness of peril on the part of the insured are requisites to the application of this clause, but they were rendered in cases

in which he was in fact ignorant thereof, and the danger was not so obvious as to invoke the rule of duty to know that which was not actually known, and it was neither mentioned nor discussed. It is believed that, in all those cases in which the danger was obvious and there was opportunity for deliberation, not instances of sudden peril, precluding volition or producing momentary confusion of thought, the courts have uniformly held the insured bound to know it and treated him as if his knowledge thereof had been admitted or uncontroverted. There are cases, however, which have been excluded from the operation of the clause, apparently upon another principle, recognized in the law of negligence, which excuses conduct that would amount to negligence but for the suddenness with which the party was confronted with danger, rendering it uncertain as to whether the act was voluntary or deliberate. They go to the jury for the determination of the disputed question of fact, namely, whether the act was voluntary. We think *Fid. & Cas. Co.* v. *Chambers,* 24 S. E. 896, relied upon, in the brief for defendant in error, as being directly in point and controlling, belongs to this class. It is akin to our negligence case of *Mannon* v. *Railway Co.,* 56 W. Va. 554. There was neither immediate nor apparent danger when the insured sat down upon the railroad, but suddenly a train came around a curve at full speed, and, in his confusion, he attempted to secure the bag he had laid on or near the track and so subjected himself to the injury. It was a sudden emergency, and the immediate or proximate cause of injury was probably an involuntary act. Another case, so invoked, is governed by the same general principle, but differs from the *Chambers Case* in the circumstances and cause of involuntary action. The insured ran toward a moving train, without any intention of boarding it or coming into contact with it. By a mere mistake of judgment, he ran closer than he should have done. In attempting to stop, he stumbled and fell against the engine. His falling was an accident and purely an involuntary act.

Applying these principles to the undisputed facts, disclosed by the evidence, we conclude that, as matter of law, there was a voluntary exposure to obvious risk on the part of the insured. He must have known the location of the stand pipe or water column and its proximity to the railway track. He had passed it frequently, and did so just before the accident. The danger

in his attempt to climb on an engine, approaching this structure at the rate of eight or ten miles an hour, and at a distance of only sixty or seventy-five feet from it, was so baldly apparent that he, if living, could not be excused on the ground that he did not see it or was not conscious of it. Nothing in his situation or the circumstances precluded deliberate action, and he was, therefore, bound to avail himself of the reasonable use of his faculties and such judgment as an ordinarily prudent man would have exercised. The fact that others did the same thing or similar acts, or that he had previously done it without injury, does not alter the case. *Garcelon* v. *Accident Ass'n,* 81 N. E. 201; *Insurance Co.* v. *Seaver,* 19 Wall. (U. S.) 531. The beneficiary of the policy occupies no higher position in law than he would hold, if living.

· We are unable to accept the view that the other clause in the policy here quoted, limiting the liability when accidental injury results from or is received while quarreling, fighting or violating the law, precludes a recovery of the full amount of the policy. The mere jumping on or off of a car or train is not made a misdemeanor by section 4282, Code 1906. A passenger or employe may lawfully do this. The statute is aimed at trespassers. It is penal and ought to be strictly construed. Passengers and employes are expressly excepted, because they are on the premises by invitation of the railroad company, and have right and frequent occasion to board trains. The insured in this case was an employe of the railroad company whose engine he attempted to board, and his act was, therefore, expressly excepted by the statute, provided he was such an employe as is within the exception. The statute does not classify either employes or trains. The terms of the exception are general. In any attempt to limit it to employes of any class or department, or to exclude section men, shop employes or others whose duties do not require them to go on board the trains or engines, or passengers boarding other than passenger trains, the courts would apply the rule of liberal construction to a penal statute in violation of an universally recognized principle. *Ross* v. *Reeves,* 62 W. Va. 7; *Hall* v. *N. & W. R. Co.,* 44 W. Va. 36; *Shumate* v. *Com.,* 15 Grat. 653; *Yancy* v. *Hopkins,* 1 Munf. 419; Lewis Suth. Stat. Con., sec. 526, *et seq.*

The views, principles and conclusions, here stated, make clearly apparent the error of the trial court in refusing to direct a verdict

for the defendant on its motion. It complains of the refusal of instructions numbers 1, 2, 5, 6 and 7, which the court refused to give at its request. No. 1 embodies the proposition that the boarding, or attempted boarding, of a moving freight train, resulting in injury by coming in contact with a structure standing beside the track, without more, constitutes voluntary exposure to unnecessary danger or obvious risk. Instruction No. 2 places an attempt to climb upon a moving locomotive or freight train, not provided for passenger traffic nor for the reception or discharge of passengers, without more, within the limited liability clause. Instruction No. 5 predicates the same conclusion upon riding upon a locomotive and allowing the body to protrude beyond the side thereof. We do not think the court erred in refusing any of these instructions. They are all too broad in that they make the acts therein mentioned limit the liability without regard to the circumstances and conditions, obtaining at the time and place of the injury, and leave out the important element of knowledge of danger on the part of the insured or duty to observe obvious danger. It is too much to say that every attempt to board a moving train and every instance of leaning outside of the car or engine would have this effect. The circumstances and conditions which may exist are almost innumerable and inconceivable in variety, and, while it is possible, to some extent, to classify cases, they all differ more or less, in respect to the facts, and almost any conceivable act may be attended by circumstances that make the case, arising thereon, proper for jury determination.

The other two instructions refused, numbers 6 and 7, are predicated on the view that the insured was engaged in an unlawful act when the accident occurred. As we take the view that he was not so engaged, it necessarily follows that, in our opinion, the instructions were bad and properly refused.

Over the objection of the defendant, the court gave one instruction for the plaintiff in which the jury were told, first, that the boarding of the engine was not a violation of the statute, making it criminal to jump on or off of trains; and, second, that they might find a verdict for the plaintiff if they believed from the facts, circumstances and evidence that the water tank was a dangerous obstruction, unless they should further believe that the danger was known to the insured and could have been

reasonably expected by him. The court erred in giving the instruction, since the second proposition, involved in it, submitted to the jury a matter which it was the duty of the court to pass upon and declare as a matter of law. Upon the admitted and uncontroverted facts, disclosed by the evidence, the danger and risk were palpably obvious. The insured was bound to know it. The law did not permit him to say, nor the jury to find, that he did not know it, or to excuse him because, though having opportunity for deliberation and voluntary action, he did not make use of the faculty of sight, which would have revealed to him the danger and the risk. There was no basis in the evidence for a finding in favor of the plaintiff. Under such circumstances, it is error to give an instruction telling the jury they may so find. *Kuykendall* v. *Fisher,* 61 W. Va. 87, 102; *Parker* v. *Building & Loan Ass'n,* 55 W. Va. 134.

For the errors aforesaid, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

BRANNON, JUDGE:

Upon principles stated and the character of the case given in the opinion in this case, I would render final judgment for the defendant in this Court, especially as the defendant moved the court to direct a verdict. This Court finds the evidence insufficient to sustain the verdict. Therefore, the motion to direct a verdict should have been sustained. The defendant is entitled to have the error committed in overruling the motion for a verdict corrected on this appeal. I cite *Mannin* v. *Insurance Co.,* 53 W. Va. 557, for reasons which would move me to render final judgment. Also *Ketterman* v. *Railroad,* 48 W. Va. 606; *Cobb* v. *Boom Co.,* 57 W. Va. 49.

*Reversed and Remanded.*