# CHARLESTON.

A. S. BOOKER *v.* LAKE & EXPORT COAL CORPORATION.

Submitted February 28, 1922.    Decided March 7, 1922.

TRIAL—*Direction of Verdict Proper When One Different from that Which Court is Asked to Direct Must be Set Aside.*

Where the evidence given on behalf of defendant is uncertain and insufficient to support a verdict for the defendant, so that such verdict if returned, must be set aside, and the evidence in support of plaintiff's claim is clear and convincing, it is not error for the court to instruct the jury to find for the plaintiff.

Error to Circuit Court, Mercer County.

Action by A. S. Booker against Lake and Export Coal Corporation. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Mc Claugherty & Richardson,* for plaintiff in error.
*Russell S. Ritz, for* defendant in error.

MEREDITH, JUDGE:

Plaintiff sued in assumpsit for recovery of a balance of $1779.46 and interest, alleged to be due on account of coal sold defendant. Defendant pleaded non-assumpsit and also filed a special plea of set-off, in which it claimed a balance of $6,308.75 for loss by reason of the fact that the coal shipped it by plaintiff had to be re-classified. After introduction of all the evidence of the parties the court, over defendant's objection, directed the jury to find for the plaintiff for the full amount of his claim, and entered judgment on the verdict so found; defendant's motion to set aside the judgment and award it a new trial being overruled, it obtained a writ of error to this court. Defendant assigns as error the court's action in directing a verdict for plaintiff. The true test in such cases is whether if the jury had found for the other party, the court could have allowed the verdict to stand. *Diddle* v. *Continental Insurance Co.,* 65 W. Va. 170, 63 S. E. 962; *Potts* v. *Union Traction Co.,* 75 W. Va. 212, 83 S. E. 918; *Siever* v. *Coffman,* 80 W. Va. 420, 92 S. E. 669; *Vance* v. *Frantz,* 83 W. Va. 671, 99 S. E. 12.

Plaintiff is a coal broker, living at Bluefield; defendant is a corporation, having offices at Huntington, West Virginia; Norfolk, Virginia; and New York, and is engaged in buying coal for resale.

On August 3, 1920, defendant purchased from plaintiff 50 cars run of mine coal for pools 5, 6 and 7 of the Tidewater Coal Exchange and of quality and preparation satisfactory to them. All shipments were to be of merchantable

fendant, destination, Bluefield Scales, West Virginia. The price was $17.25 per net ton, f. o. b. mines, Clinch Valley District, Norfolk & Western Railway Company. Plaintiff promptly shipped the 50 cars during the week of August 6, 1920, and then advised defendant that he had 14 other cars of coal available and on wheels. Defendant agreed to take these on the same terms and they went forward not later than August 7th. All these cars reached the Tidewater Coal Exchange, or what later turned out to be the Lambert's Point Coal Exchange, not later than August 16th, where part of the coal was re-classified, 482.85 tons into pool 13, 544½ tons into pool 39, and 113½ tons unclassified. The remainder went into pools 5, 6 and 7, but in what proportions does not appear. All this coal was accepted by defendant, notwithstanding the fact that it had full knowledge of the re-classification by the Exchange, and was disposed of by it, and no notice of any such re-classification was given plaintiff, nor was any objection to the quality or grade of the coal made until the trial. The total price of the coal was $61.241.81. On August 18, the defendant paid $41,693.75, and on October 19, it sent to plaintiff a complete account covering the shipments, showing the initial car number, net weight of coal, price per ton and total amount on each car, with its check for $16,308.86, in full payment of the total purchase price on 54 cars, and deducted $3,25 per ton on the remaining 10 cars, claiming then that these 10 cars *were rejected* by the Coal Exchange, and that this deduction was made because of the fact that these cars were rejected. The amount of the deduction for these cars was $1,778.72, but in plaintiff's demand it is fixed at $1,779.46. This item is the point in controversy. The defendant's account also made a deduction for freight differentials, but no question arises as to that. The plaintiff accepted the check and promptly requested the defendant to furnish him the rejection notices from the Coal Exchange as to the 10 cars which the defendant claimed were rejected, but these were never furnished, because in fact the coal had not been rejected. This deduction of $1.778.72 was shown by items as to the 10 cars on a debit memorandum enclosed with defendant's account fur-

nished plaintiff October 19th.  As soon as plaintiff received
this account and the memorandum of the 10 cars, he wrote
the Exchange, inquiring whether the Exchange had rejected
these 10 cars as had been reported to him by defendant.  The
Exchange replied that none of the 10 cars had been rejected,
but that two of them had been diverted from pools 5, 6 and
7 to other pools.  Of course, diversion to other pools did not
mean that they were rejected.  It developed in the testimony
of the assistant manager of the Exchange that two cars from
the Lamb Branch Coal Company's mine, I. R. R. 5132 and
5185, were placed in the unclassified stock, but these two
cars were not among the 64 cars furnished the defendant by
plaintiff.  On the trial the defendant took various positions.
It shifted from its stand as to the 10 cars it had previously
claimed were rejected and claimed that about 20 of the 64
cars were re-classified by the Exchange; that by reason of
this re-classification its credits in pools 5, 6 and 7 were de-
pleted and it exchanged this re-classified coal for coal in other
pools, and which, upon re-exchange it had to sell at a loss, but
it no where appears that it lost money on the actual coal
that plaintiff shipped it unless it might be inferred that it
lost money on the unclassified stock.  It does not appear just
when this was sold by defendant.  Defendant made no claim
against plaintiff on account of any re-classification of the
coal, so far as is shown by the record, until after suit was
brought.  As late as January 20, 1921, it wrote plaintiff's
counsel about the matter and stated:  "The only point still
in controversy is the debit memorandum amounting to
$1,778.72, and possibly our debit memorandum No. 1411 for
$666.96."  The plaintiff and defendant appear to have treated
all the other matters involved in the account as settled.  Not
until after suit was brought for the $1,778.72, the amount in
controversy all the way from October 19th till the case was
called for trial, does it appear that any claim was made by
defendant on account of some of the coal being re-classi-
fied; nor has it been shown that coal in pools 13 and 39 were
inferior to the coal in pools 5, 6 and 7.  Effort was also made
by defendant to make claim that the deduction of $3.25 per
ton on the 10 cars was because of over-shipment of the orig-

inal order of 50 cars, and later the item of $666.96 mentioned in defendant's letter to plaintiff's attorney of January 20, 1921, appears to be a further claim of $3.25 per ton deduction on the 4 cars out of the 14 extra cars not covered by the debit memorandum of $1,778.72.

The evidence of the plaintiff is clear and free from uncertainty. It shows that he shipped the coal at the stipulated price and defendant accepted it and paid for all the coal except it made a deduction of $3.25 per ton on 10 cars; that defendant refused to pay this item because it claimed the 10 cars were rejected, when in fact they had been accepted and sold. On the other hand, the defendant's evidence is so uncertain and so unsatisfactory that we do not think the case should have been submitted to the jury, and if it had been, and the jury had returned a verdict in defendant's favor, it would have been the duty of the court to set it aside. The court was therefore justified in directing a verdict in plaintiff's favor and it would have been error not to have done so. *Diddle* v. *Insurance Co.,* 65 W. Va. 170, 63 S. E. 962. We, therefore, affirm the judgment.

*Affirmed.*