ALBERT R. WILLARD *vs.* MASONIC EQUITABLE ACCIDENT ASSOCIATION.

Franklin.   September 21, 1897. — October 20, 1897.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Accident Insurance —* " *Voluntary Exposure to Unnecessary Danger* " — *Implied Invitation to cross Railroad Track.*

The attempt of the assured in a policy of accident insurance to cross a railroad track between the cars of a freight train at a place where there is no implied invitation by the railroad company to cross, and when the train is in readiness to be moved, of which fact the assured was aware, although he thought that he had time enough to get across in safety, is a "voluntary exposure to unnecessary danger," within the meaning of the policy.

CONTRACT, upon a certificate of membership, wherein the defendant promised to pay the plaintiff the sum of twenty-five dollars per week for a period not exceeding fifty-two consecutive weeks, as indemnity for loss of time resulting from bodily injury caused through external violent and accidental means, within the meaning of the conditions of the certificate.   The plaintiff claimed four hundred and fifty dollars for eighteen weeks' loss of time on account of an accident which occurred on September 6, 1895.   The policy contained the following conditions :   " This insurance does not cover . . . accident . . . resulting wholly or partly, directly or indirectly, from any of the following causes, or while so engaged or affected ; . . . voluntary exposure to unnecessary danger ; . . . violating law."

At the trial in the Superior Court, before *Sheldon,* J., the plaintiff, who was superintendent of the gas works in Greenfield, testified that on September 6, 1895, he walked down Miles Street in that town to go to the gas-house, that being the shortest cut, and took a path to the shop of one Field, to reach which by this

route he would have to cross the tracks of the Fitchburg Railroad; that the path referred to was travelled by everybody who went that way; that a good many people crossed there every day; that he had seen them and had been across there himself hundreds of times; that as he came to the track he saw a freight train standing there; that he stopped and looked up and down the track, and saw what he supposed was the engineer of the train leaning out of his window and looking down on the ground, and two or three rods the other way three or four men whom he supposed were brakemen on the train; that he thought they were waiting for orders to go on, or for another train, and that he had time enough to get across; that he waited possibly a minute, just long enough to look up and down the track to assure himself that everything was safe, and he thought it was safe to cross, and so he stepped up on the step of the front of a car and in between the cars, and just at that time they backed up to take. the slack and caught his foot between the draw-bars; that there were six or seven tracks at this place, and he looked along these and there were no trains excepting this one; that the other tracks were all clear with the exception of two or three freight cars that stood scattered along the tracks; and that he was between the third and fourth car from the engine when injured.

On cross-examination the plaintiff testified that the general run of the railroad was east and west; that the railroad station was about ten rods east from the place of the accident on the same side of the railroad tracks, that is, on the north side; that there was a water pipe about half way between the place of the accident and the station; that at the further end of the station, the east end, there was a street under the railroad, and from the end of the station there were stairs leading down from the station platform to the travelled way; that Miles Street was nearly parallel with the railroad tracks at the point where the plaintiff left them, that is, on the north side of the tracks; that if he had continued straight down Miles Street he would have come out at the station; that he left Miles Street at a point twelve or thirteen or possibly fourteen rods west from the station; that he took a path which led in a slanting direction toward the station; that between the place where he was injured and the station was an open space; that the railroad at this point was a double track

road ; that on the north side of the main tracks were one or two side tracks, and on the south side four or five side tracks, and that these tracks were used by the railroad as a yard ; that on the south side of the tracks there was a path about three hundred and fifty or four hundred feet west of the point where the plaintiff attempted to cross, leading down to Field's shop; that the train was standing on the east-bound main track; that it would have been considerably further to have gone down Miles Street to the station, and thence by the travelled street to Field's shop; and that the place between the third and fourth car, where the plaintiff attempted to cross, was about a hundred and twenty-five feet from the engine.

The judge directed a verdict for the defendant; and the plaintiff alleged exceptions.

*D. Malone,* for the plaintiff.

*D. T. Montague,* for the defendant.

ALLEN, J.   There was no implied invitation by the railroad company for the plaintiff or other persons to cross the railroad track at that time and place.   The track was actually occupied by a freight train, which was in readiness to be moved.   An attempt to cross the track between the cars under such circumstances involves a direct peril, in case the train happens to be moved during the time occupied in getting across.   The plaintiff knew that the train was liable to be started soon, he saw the engineer and brakemen in their places upon it in readiness for their work, but he thought they were waiting for orders to go on, or for another train, and that he had time enough to get across.   Without any inquiry, he made the attempt simply on his own idea that he would have time enough.   This was certainly a risky thing to do, and it was unnecessary, because he might easily have gone round.   It was a voluntary exposure to unnecessary danger, within the meaning of the policy.   The case is distinguishable from *Keene* v. *New England Accident Association,* 161 Mass. 149, and is more like *Tuttle* v. *Travellers' Ins. Co.* 134 Mass. 175, though even stronger against the plaintiff than that case was.   See also *Cornish* v. *Accident Ins. Co.* 23 Q. B. D. 453; *Follis* v. *United States Accident Association,* 94 Iowa, 435.

*Exceptions overruled.*