GLASS v. MASONS' FRATERNAL ACC. ASS'N OF AMERICA.

(Circuit Court, N. D. Iowa, E. D.   December 24, 1901.)

1. ACCIDENT INSURANCE—CONDITIONS OF POLICY—KNOWLEDGE OF INSURED.
    Where an application for a policy of accident insurance, made by reference a part of the contract, did not purport to state the limitations and exceptions defining the liability of the company, the applicant must be presumed to have understood that the policy issued thereon would state more particularly and fully the terms of the contract; and when he accepted the policy, and paid premiums thereon without objection for a number of years, the company will not be estopped to invoke its provisions in defense to an action thereon because the condition relied on was not mentioned in the application, unless it is contradictory of something therein.

2. SAME—EXCEPTED RISKS — VOLUNTARY EXPOSURE TO UNNECESSARY DANGER. An accident insurance policy contained a provision that it should not cover death or disability resulting from "voluntary exposure to unnecessary danger." The insured was struck by a train and killed while crossing the tracks in a railroad yard in a city for the purpose of boarding a suburban train standing on one of the tracks on which he designed to ride to his home. The train was standing in the yards preparatory to being moved up to the station, which was some distance away. The railroad company did not invite nor encourage passengers to board the train at the place where it stood, which involved danger to them in crossing tracks upon which trains were constantly passing; but deceased and others, who were employed in the vicinity, were in the habit of entering the train there for their own convenience, and to save a walk to the station, to which there was a safe passage by way of a. viaduct over the tracks. *Held*, that the death of the insured was the result of his voluntarily exposing himself to an unnecessary danger, which defeated the right to a recovery on the policy.

Action at Law on an Accident Insurance Policy. Trial to the court.

The parties in this case having in writing waived a jury trial, the court, from the evidence submitted, finds the facts of the case to be as follows:

(1) That the plaintiff herein was, when this action was begun, and continues to be, a citizen of the state of Iowa, residing in the Eastern division of the Northern district of Iowa, and that he is the duly appointed and qualified administrator of the estate of M. L. McNally, deceased, so appointed by the district court of Howard county, Iowa.

(2) That the defendant company was, when this suit was begun, and continues to be, a corporation created under the laws of the state of Massachusetts, and is engaged in the business of accident life insurance.

(3) That in April, 1891, one M. L. McNally resided at Lime Springs, Howard county, Iowa, being engaged in the business of buying and selling grain, and on the 13th day of April, 1891, the said McNally signed an application for membership in the defendant association, which was in the form following:

"Fill in This Blank Plainly with Ink.

"Application for Membership.

"Class 1.                                                            No. 20,566.

"The Masons' Fraternal Accident Association of America, Westfield, Mass.

"Incorporated Under Massachusetts Laws.

"$5,000 insurance.                    $25.00 weekly benefits.
"$2,500 for loss of hand or foot.    $5,000 for loss of hand and foot.
"$5,000 for loss of both hands or
        both feet.                   $5,000 for loss of both eyes.

"Applications for membership are not binding until accepted by the secretary. No other person is authorized to bind the association.

"No. 1. Name in full: M. L. McNally.
"No. 2. Age: 36.
"No. 3. Residence: Street & No. ———. Town: Lime Springs. State: Iowa.
"No. 4. Place of business: Town; Lime Springs, Iowa.
"No. 5. P. O. address where notices are to be mailed: Lime Springs, Iowa.
"No. 6. Occupation: Merchant grain dealer.
         "(Name them all.)
"No. 7. What are the duties re-  ⎫
         quired of you in above   ⎬ Office duty.
         occupation?             ⎭
"No. 8. I agree to have my occupation classed as ———.
"No. 9. I agree to carry this insurance one year, and pay assessments quarterly.
"No. 10. The weekly indemnity herein named does not exceed my salary.

"**No. 11.** In case of accidental death, the benefits of my certificate shall be payable to
A. Given name in full:
     Anna G. Nally.
B. Residence: Lime Springs.
C. Relationship, if any:
     Wife.

"**No. 12.** Insurance in case of accidental death to be $————.
"**No. 13.** Weekly indemnity for disabling injuries to be $————.
"**No. 14.** I have never had, nor am I subject to, fits, disorders of the brain, or any bodily or mental infirmity, except as herein stated.
"**No. 15.** I am not contemplating any special journey, or any hazardous undertaking, except as herein stated.
"**No. 16.** My habits are correct and temperate, and I agree that this certificate shall not cover any injury happening through or while under the influence of intoxicating drinks or narcotics.
"**No. 17.** I understand the classifications of risks, and agree that for any injury received in any occupation or exposure classed by this association as more hazardous than those above stated I shall be entitled to recover only such amount as the premium paid by me would purchase at the rates fixed for such increased hazard.
"**No. 18.** I hereby agree that Bro. L. G. Basford, into whose hands this application is given for transmission to the Masons' Fraternal Accident Association, is my agent in the perfecting of the insurance under this application.
"**No. 19.** Name of Lodge: Howard, No. 244.   Location: Lime Springs.
"Dated April 13, 1891.
    "[Signed]                                M. L. McNally.
"Please fill out the above application, inclose membership fee, and forward to J. A. Lakin, Secretary and Gen. Manager, Masons' Fraternal Accident Association of America, Westfield, Mass.
"Membership fee, five dollars, payable but once.
"Sent to the home office by L. G. Basford.
"Send certificate to ————."

Stamped on the back of this application is the following:
"Approved and accepted Apr. 18, 1891."

(4) This application was duly approved by the defendant company under date of April 18, 1891, and on that date the defendant company issued a certificate or policy of insurance, of which a correct copy is attached to the original petition filed in this case on the 9th day of May, 1900, in the district court of Howard county, Iowa, and which copy is made part of this finding.

(5) That at the date of the signing of the application named in the third finding and the issuance of the certificate or policy named in the fourth finding the defendant company had in force certain by-laws, a copy of which is attached to the answer to the amended petition filed in this case on the 15th day of June, 1901, which copy is made part of this finding, and also had issued for the guidance of parties interested a manual containing classifications of risks and other matters, of which manual a copy is attached to the said answer of the defendant filed in this court on June 15, 1901, and which copy is made part of this finding.

(6) The certificate or policy of insurance issued by the defendant company under date of April 18, 1891, was delivered to the said M. L. McNally, who paid to the defendant company, as they came due, the payments called for thereby, and the contract of insurance existing between the said McNally and the defendant company was in full force at the date of the death of the said McNally on the 27th day of October, 1899, so far as the same was dependent upon the payment of the assessments or premiums coming due under the contract of insurance.

(7) That in the year 1899 the said M. L. McNally entered into the employ of the Albert Dickinson Company, at Chicago, Ill., which company was engaged in the grain business, having their office on West Taylor street, some distance east of Beach street. Beach street is 60 feet in width, and between West Taylor street on the south and Forquer street on the north there was

during the year 1899 four railroad tracks maintained and operated along Beach street, and within the limits thereof, there being on the east side thereof a wagon track or road some 20 feet in width, and also being within the boundary of the street. To the west of Beach street there were some 10 railroad tracks maintained and operated, and along these tracks, including those located within the limits of Beach street, trains and locomotives were frequently passing. On West Taylor street, beginning at a point near the office of the Albert Dickinson Company, there was during the year 1899 a viaduct extending across the railroad tracks in Beach street and those west thereof, thus affording a passageway proper for the use of persons and vehicles, above the railway tracks. The location of the streets, railway tracks, viaduct, and the office of the Albert Dickinson Company, as the same existed in 1899, are shown upon a blueprint map of the locality, which is made a part of this finding.

(8) As the situation actually existed in the year 1899, there was nothing to indicate to the eye that Beach street did not in fact extend westerly far beyond its actual boundary. There were no buildings or sidewalks upon or near the western line of the street between West Taylor and Forquer street, and nothing in the situation or surroundings, so far as observable by sight, which would cause a person to know when he had passed the western boundary of the street.

(9) The railway track immediately west of the line of Beach street was in the year 1899 used by the Chicago, Burlington & Quincy Railroad Company. It was the custom of that company and the other railway companies using the tracks in and adjacent to Beach street in the year 1899 to place on some of the tracks passenger cars, where they remained until they were taken down to the Union Station to form the trains running to the suburban towns in the neighborhood of Chicago.

(10) As a matter of convenience, and to save the time needed to reach the Union Depot, many of the persons employed in the warehouses and offices, including the office of the Albert Dickinson Company, which were located east of Beach street, were in the habit, during the year 1899, of crossing Beach street between West Taylor and Forquer streets, on the level of the railway tracks, and getting upon the passenger cars which were on the tracks adjacent to Beach street on the west, and which cars were about to be moved down to the Union Station, preparatory to starting for the suburban towns. The cars placed on these tracks were not so placed by the railway companies for the purpose of receiving passengers thereon, nor did the railway companies invite passengers to get upon these cars, but, on the contrary, the companies discouraged such action on part of the public.

(11) On the evening of October 26, 1899, M. L. McNally left the office of the Albert Dickinson Company, where he was employed, for the purpose of taking the railroad train which would carry him to the suburban town of La Grange, where he then lived. To that end he walked across Beach street on the ground level, in the direction of the passenger cars, which were then on a track west of the street proper, and which cars were shortly to be taken to the Union Station, and thence sent to or through the town where McNally resided. As McNally reached and passed upon the track next west of the line of Beach street, he was struck by a railroad train running at a speed of 8 to 10 miles per hour, along this track, and received such violent external injuries that the same caused his death on the day following.

(12) When McNally passed upon the railroad track upon which he was injured, he did not notice the approaching train, and did not know that he was in fact subjecting himself to the danger of being struck and injured by that train when he passed upon the track along which it was moving.

(13) The point where McNally was when the railway train struck and injured him was between the rails forming the track next west of the west line of Beach street, and about six feet west of the west line of Beach street.

(14) Anna G. McNally, the wife of M. L. McNally, was not living at the date of her husband's death, having predeceased him.

(15) Due notice and proofs of the accident and death of M. L. McNally were furnished to and received by the defendant company, but payment of any sum was refused by the company on the ground that under the circum-

stances of the accident and the provisions of the contract between the deceased and the company no liability was imposed upon the company.

H. T. Reed and C. W. Reed, for plaintiff.

R. J. Burglehaus and John McCook, for defendant.

SHIRAS, District Judge (after stating the facts).   In the certificate or policy of insurance issued by the defendant company is found the following provision:

"Ninth. This insurance does not cover disappearances; nor injuries of which there is no visible marks upon the body; nor accident, nor death, nor disability resulting wholly or partly. directly or indirectly, from any of the following causes, or while so engaged or affected:  Suicide, sane, or insane; voluntary exposure to unnecessary danger;  walking or being on a railway bridge or roadbed (railway employés excepted)."

On behalf of the plaintiff it is claimed that this provision, although it is contained in the policy delivered to the insured and by him accepted, does not in fact enter into or form part of the contract of insurance which is the basis of this suit, for the reason that this provision is not found in the application •signed by McNally.   In view of the reference to the application contained in the policy, it may well be held that the application is to be deemed to be part of the written contract between the parties; or, in other words, that in arriving at the true construction of the contract of insurance regard must be paid to the contents of the application, as well, as to those of the policy.   It is equally true that it must be held that the insured understood that a policy of insurance, based upon his application, would be issued to him by the company, in case his application was accepted and approved, which policy would state fully and at length the terms and conditions of the contract.   In the application is not found a statement of the limitations and exceptions defining the extent of the liability of the company, but it is practically confined to the statements with respect to the age, place of residence, business occupation, and personal habits of the applicant, with a statement of the amount of insurance and indemnity desired.   The facts of the case do not present the question that sometimes arises when a provision in the policy is found contradictory to an express provision contained in the application, or in cases of which McMaster v. Insurance Co., 22 Sup. Ct. 10, 45 L. Ed. ——, is a sample, wherein the company, without notice to the insured, inserts in the policy some provision, which, if enforced, would materially change the terms of the contract as recited in the application.   In the case at bar the ninth provision found in the policy, and hereinbefore cited, does not contradict, change, or modify any express provision found in the application signed by the insured, and there are no facts shown which would justify the court in holding that the company is estopped from relying on the cited provision of the policy.   There is no evidence tending to show that the insured was induced to enter into the contract of insurance by any statements or representations differing from those found in the application and the policy based thereon, and, as the insured continued to pay the sums coming due as premiums under the terms

of the policy for a period of eight years after its delivery to him, it must be held that he was cognizant of its provisions, and was content to accept the same as the evidence of the contract existing between himself and the company. Thus we reach the questions whether McNally did not voluntarily expose himself to unnecessary danger, and thereby bring about the accident resulting in his death; and, further, whether in fact he was not on a railway roadbed when injured, in such sense that he was not then under the protection of the policy. The facts show that when McNally left the office in which he was employed his purpose was to reach the railway train that would take him to the town in which he lived. This train was started from the Union Depot, and this was the place furnished by the railway company for the use of the persons desiring to take passage on the train. The railroad company did not invite its patrons to take the cars on Beach street at the place where the accident happened. This locality was not held out as a proper or safe place for the people to come to in order to get upon the cars. It cannot be said that McNally was misled with respect to the dangers incident to crossing Beach street and the space beyond it at the place where the accident happened through any action or want of action on part of the railway company or on part of the defendant company. The place where the injury was received was not part of any street or pathway leading from the office wherein McNally was employed to the cars which he was aiming to reach. In order to get upon the train which would take him to his home, it was not necessary that he should get upon the cars when they were placed on the track between West Taylor and Forquer streets. If he had chosen to go upon the viaduct which spans Beach street, he would have avoided all the danger of crossing the numerous railway tracks which he undertook to pass over, and could have readily gone to the Union Station for the purpose of getting on the proper train. Instead of so doing, he voluntarily undertook to cross some half dozen railway tracks, and to subject himself to the danger caused thereby, in actual violation of the duty he owed to himself and to the railway companies. There can be no question, under the evidence, that the place where McNally undertook to cross was a place of great and known danger. McNally chose to place himself in this position of danger, not in the performance of any duty he owed to his employers, to the railway company, or to the public, but simply that for his own convenience he might save a little distance in reaching the Union Station. Under these circumstances, it must be held that the dangers to which McNally subjected himself were great, and that he, knowing their existence, voluntarily and unnecessarily exposed himself thereto, and that such action on his part defeats a recovery on the policy. The conclusion thus reached obviates the necessity of considering the questions arising out of the provisions in the policy with respect to the insured being on a railroad bed when the accident happened, and which have been very fully argued by counsel, but which will not be further passed upon in this opinion.

Judgment for defendant.