ALTER, Respondent, v. UNION CASUALTY and SURETY COMPANY, Appellant.

St. Louis Court of Appeals, November 15, 1904.

1. **ACCIDENT INSURANCE: Limited Liability: Voluntary Exposure.** The holder of an accident insurance policy in going from his place of business to the station of the railway company for which he worked, instead of taking a safe and longer route, chose, as he had been accustomed to do, a shorter one through the railroad yards through which trains, both freight and passenger, were constantly passing in opposite directions, and finding his way blocked, climbed over a freight train and while descending from it was injured. *Held,* that he was guilty of voluntary exposure to avoidable danger and could only recover from the insurer the amount conditioned in the limited liability clause upon injuries from such exposure.

2. ———: ———: ———: **Law Question.** In an action by the insured on his accident policy for the injuries received, where his own individual testimony disclosed the facts showing a voluntary exposure, the jury should have been instructed to find for defendant.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

REVERSED AND REMANDED (*with directions*).

*Percy Werner* for appellant.

(1) The injury which resulted in the loss of respondent's left hand was clearly the result of a voluntary exposure to avoidable danger. Bean v. Employer's Liability Corp., 50 Mo. App. 459; Overbeck v. Ins. Co., 93 Mo. App. 453; Glass v. Accident Assn., 112 Fed. 495; Ins. Co. v. Jones, 80 Ga. 541; Follis v. Accident Assn., 94 Ia. 435; Willard v. Accident Assn., 169 Mass. 288; Smith v. Accident Assn., 104 Mich. 634; Sheblin v. Accident Assn., 94 Wis. 180; Price v. Life and Accident Co., 99 N. W. 887; Small v. Travellers' Pro. Assn., 118 Ga. 900; Cornish v. Ins. Co., 23 Q. B. 543. (2) Attaching oneself to and climbing over moving freight cars, simply for the purpose of making a short cut or of saving time, by one not employed on the train, and in a railroad yard in which there are numerous tracks, and dotted all over with semaphore or signal posts and switch stands, is gross negligence. Hudson v. Railroad, 101 Mo. 13, 14 S. W. 15; Corcoran v. Railroad, 105 Mo. 399, 16 S. W. 411; Murphy v. Railroad, 43 Mo. App. 342; Heaton v. Railroad, 65 Mo. App. 479.

*Albert G. Morrison* for respondent.

(1) The general rules of law relating to negligence do not apply in measuring the liability of the company under an accident insurance policy. Keene

v. Mut. Acci. Assn., 161 Mass. 149; Schneider v. Ins. Co., 24 Wis. 28; Collins v. Ins. Co., 96 Iowa 216. (2) The term "voluntary exposure to avoidable danger" relates to dangers of a substantial character which the assured realized and which he consciously and intentionally assumed. Accident Assn. v. Hubbell, 56 Ohio St. 516; Ins. Co. v. Mitchell, 47 U. S. App. 260, 24 C. C. A. 305, 78 Fed. 754; Smith v. Ins. Co., 56 L. R. A. 271; Follis v. Accident Assn., 94 Iowa 435, 28 L. R. A. 78; 2 May on Insurance (3 Ed.), sec. 530. (3) The burden of proof was on defendant to show a state of facts bringing the case within the provision of the policy relating to "voluntary exposure to avoidable danger." Sutherland v. Life Ins. Co., 87 Iowa 505; Jones v. Accident Assn., 92 Iowa 652.

REYBURN, J.—Respondent brought this action upon a general accident policy of insurance issued for the principal sum of $2,000 against bodily injuries sustained through external, violent and accidental means, if death should result from such injuries within ninety days, and in event that loss by actual separation at or above the wrist of the left hand should so result within ninety days, the company to pay the assured one-third of the principal sum, above named. The petition setting forth the terms of the contract of insurance, charged that on the twenty-fourth day of June, 1903, while the policy was in full force and effect, as plaintiff was riding on cars in yards of the Terminal Railroad Association, in the city of St. Louis, he was struck by a semaphore or signal post at the side of the track and knocked from the cars, falling in such a way that he sustained an injury to his left hand, necessitating its amputation above the wrist and concluded with general allegations of notification of accident and of proof of injury, in obedience to the policy.

Defendant answering, admitted the occurrence of the injury, the issuance of the policy and that it was

in force at the time of the injury and that plaintiff had complied with the policy respecting notice of injury and its proof. For affirmative defense, it pleaded that the policy provided, that if any accidental injury, fatal or otherwise, be caused, directly or indirectly, by voluntary exposure to avoidable danger, the company's liability shall be limited to a sum equal to one-twentieth of the principal sum or fractional part as provided, and further charged that plaintiff received the injury described whilst riding on or in consequence of his having attached himself to one of a string of coal cars as they were passing through the yards of the Terminal Railroad Association in St. Louis, or whilst attempting to alight therefrom by being dragged or knocked therefrom by a semaphore or signal post erected alongside of the track over which the cars were passing, that such cars were not intended for passengers and plaintiff was not a passenger thereon, and that in getting upon and attaching himself thereto and riding thereon, and in attempting to alight therefrom, as he did, plaintiff voluntarily exposed himself to avoidable danger, within the terms of the policy and that the limit of liability of defendant, on account of such injury so sustained by plaintiff, was $33.33, being one-twentieth of $666.67, which lesser amount defendant had tendered and paid into court as due plaintiff, denying any further liability.

At the trial, plaintiff produced by defendant as its witness, testified that at time of the catastrophe and for many years preceding he had been employed as a clerk in the shops of the Missouri Pacific Railway at corner of Montrose and Chouteau avenues, south of the railroad tracks entering the city of St. Louis from the west; that on the day of his injury he left his office at five o'clock in the afternoon to proceed to his residence in Kirkwood, in the suburbs of the city, by train from the Union station. He further deposed that he went by the easiest way for him to reach the station

through the railroad yards and at Twenty-second street he observed a string of freight cars coming out of the upper, the west yard, and moving into the lower yard, but not having noticed them in time to cross before the engine, he concluded that from the length of the train, it would be impossible to arrive at the station in time for his train, unless he got over them, that they were moving slowly, possibly three miles an hour and positively not exceeding four miles per hour, so he climbed into an empty coal car and as the train was going in the same direction he was, he naturally was in no haste to get out and remained riding for a short time, and when it was time to get out, he got down and was just about ready to get off the car, when a post struck him or he struck the post, and was knocked from the car and fell, producing the injuries described. He further stated that he could have gone to the station from his office, using public streets the entire distance, by proceeding east on Chouteau avenue to Eighteenth street and across Eighteenth street to the station, but undertook a short cut through the railroad yards; that he walked from Thirtieth to Twenty-second street along the tracks before he mounted the freight car; that there were ten tracks or more in the yard comprising the Missouri Pacific, Wabash and Frisco, and semaphores or signal posts stood at different points throughout the yards as well as switch stands, and numerous trains, alike passenger and freight, arriving and departing passed and repassed during the course of a day, and the point at which he was injured was within the yard limits, but to go through the yards in lieu of over the streets reduced the distance one-half. On cross-examination, over defendant's ineffectual objections, plaintiff was permitted to testify that for twelve years it had been his custom to go to the station through the railroad yards and the latter were used to a very great extent as a public thoroughfare. He was also permitted, over de-

fendant's objection, to state that it had been his custom for the same series of years daily to get on and off trains while in motion and frequently to alight in safety from trains running at rate of twelve to fifteen miles per hour and he did not expect any injury in getting on and off the car as he did.

The statements descriptive of the accident submitted to the defendant over plaintiff's signature in support of his claim were as follows:

"I was riding east on a terminal freight pull and was just getting down to get off when I was struck by a semaphore pole, left arm badly injured, which was amputated at the hospital the same night.

"I left the office of the Missouri Pacific Railway shops and was on my way to the Union station to get my train for Kirkwood. A terminal pull coming out of Frisco yards at Twenty-second street came along and I got on to cross the pull so as to get over the tracks next to the Union station, climbed up on a coal car, and as they were going the same way I was, I stayed in the coal car and rode about a block or a little over, and in getting off on the other side from where I got on, I was dragged off by a semaphore pole and my left arm was injured, so that when I was taken to the Missouri Pacific Hospital they amputated it two inches below the elbow or near that. I can not tell exactly how it happened, whether by getting caught in the ladder connected with the semaphore or whether it happened after I fell on the ground. This happened on June 24, 1904, at about 5:15 p. m. Cars were running about three or four miles an hour."

Defendant also examined a witness, who had been employed in the railroad yards and was familiar with the location from Thirtieth street to the station, and he described their condition, stating that within those limits the Missouri Pacific had about seven tracks, the Wabash three and the Frisco about five, the Terminal three at Ewing avenue; and at Twenty-second street

they all come together, the Missouri Pacific continuing on the south side but the Wabash, Frisco and Terminal coming together on Twenty-second street and the Missouri Pacific crossing over the Terminal tracks to get at the Union station, that all the tracks between Thirtieth and Eighteenth streets were known as freight and passenger railroad yards, and there were an engine and train passing about every half minute and there were no public streets or public ways east and west through the yards, and except a small strip east of Ewing avenue on the Frisco right-of-way, the whole premises belonged to one or another of the railroads. He also testified there were two ways by which one could go from plaintiff's place of employment to the station on public streets.

At the close of the testimony, the court rejected the imperative instruction asked by defendant that the plaintiff was only entitled to recover the sum of $33.33 and directed the jury to find for plaintiff in amount of $666.67.

The question decisive of this case is whether, in the words of the contract of insurance, the injury of plaintiff was caused, directly or indirectly by voluntary exposure to avoidable danger, so that at the time of the disaster the insurance attached only to the extent of one-twentieth of that amount which would have been his measure of indemnity, if similarly injured without such exposure. Plaintiff's individual testimony, oral and in writing, established beyond dispute that as the shorter route to the Union station plaintiff elected to pass through the railroad yards, through which trains, both freight and passengers, were almost momentarily passing and repassing in opposite directions and by which his passage was likely to be at any time obstructed in lieu of selecting either way safer if less direct, open to him over the public streets of the city; and finding his way blocked he assumed the additional risk of climbing on, over and from an empty freight

car forming part of a slowly moving train. A recital of such facts is sufficient to convict him of guilt of an act of gross negligence in the minds of all reasonable persons, and such action was not excused by his daily exposure by his habit of reaching the station over such dangerous path, during the many previous years of his employment at the railroad shops, but made his conduct rather more reckless of consequences from the continuous knowledge of the danger incurred and the manifest perils of such daily trips. Quoting from a well-considered case, approved by this court, "To make him guilty of a voluntary exposure to danger, he must intentionally have done some act which reasonable and ordinary prudence would pronounce dangerous." Burkhart v. Ins. Co., 102 Pa. 162. Under such circumstances the conclusion is irresistible, that the conduct of plaintiff in voluntarily exposing himself to such perils within which plaintiff deliberately and unnecessarily brought himself with continual knowledge of their existence was so hazardous and so unnecessary that consequent injuries were the direct results of exposure to avoidable danger, and the liability of the defendant reduced under the express limitation of the policy. Authorities abound fully sustaining this position in Missouri and other jurisdictions, notably: Bean v. Employers, etc., Corporation, 50 Mo. App. 459; Glass v. Masonic, etc., Assn., 112 Fed. Rep. 495; Price v. Standard, etc., Ins. Co., 99 N. W. 887; Tuttle v. Travellers' Ins. Co., 134 Mass. 175; Corcoran v. Railway, 105 Mo. 399, 16 S. W. 411.

As the plaintiff's individual testimony disclosed facts which absolutely defeat his right of action to the larger sum to which he laid claim, the judgment is reversed and the cause remanded with directions to enter judgment for the amount of $33.33 confessedly due. All concur.