LUCETTA ARCHIBALD

*vs.*

THE ORDER OF UNITED COMMERCIAL TRAVELERS.

Androscoggin.    Opinion November 4, 1918.

*Contracts of insurance.    Accident policy.    Meaning of words "voluntary exposure to danger."    Burden of proving that assured comes within an excepted clause.*

The plaintiff is beneficiary under an accident policy issued by the defendant, and recovered a verdict of $6300. The constitution of the order, among other exemptions, provided that the benefits under the policy should not cover any death, disability or loss resulting from "voluntary exposure to danger."

The insured, who was the husband of the plaintiff, was killed while walking on the tracks of the Maine Central Railroad Company in Lewiston, at a point several hundred feet from the Lower Station, by being struck by a locomotive.

Upon defendant's motion and exceptions it is

*Held:*

1. To render one guilty of voluntary exposure to danger within the meaning of this policy he must have intentionally done some act which reasonable and ordinary prudence would pronounce dangerous, one which an ordinarily prudent man of common intelligence would know to be dangerous.

2. The term is not synonymous with lack of due care or contributory negligence. A mere passive negligence is not sufficient. It must ordinarily be active in its nature and implies both an intention to perform the act and a conscious willingness to assume the risk which is obviously connected with it.

3. The application of this definition to the facts in the case at bar brings it clearly within this exemption.

4. The defendant's request for an ordered verdict in his favor should have been given.

Action to recover the sum due under a policy of insurance issued by defendant. Defendant filed plea of general issue and also brief statement. Verdict for plaintiff in the sum of $6300. At close of evidence, defendant filed motion asking that the court direct a verdict in favor of defendant. Motion was overruled by presiding Justice; to which ruling, and other rulings of court, defendant filed exceptions. Exceptions sustained.

Case stated in opinion.

*McGillicuddy & Morey*, for plaintiff.

*George C. Wing, George C. Wing, Jr., and John A. Millener*, of the Columbus, Ohio Bar, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

CORNISH, C. J. On January 2, 1914, the defendant issued to the plaintiff's husband, Ernest U. Archibald, a certificate of insurance, in the sum of $6300. payable to the plaintiff as beneficiary in case of death occasioned by bodily injury effected through external, violent and accidental means, subject however to certain provisions, conditions and requirements contained in the constitution of the order. On January 31, 1914, Mr. Archibald was struck and killed by a locomotive while walking on the tracks of the Maine Central Railroad Company in the city of Lewiston. This suit was brought to recover the amount due under the certificate, and after a verdict for the plaintiff is now before this court on defendant's exceptions. A large number of exceptions was reserved, but it is necessary to consider only one, the refusal of the presiding Justice to direct a verdict for the defendant. We think this direction should have been given.

The constitution of the defendant order contains many exemptions. Among others it is provided that the benefits under the certificate shall not cover any death, disability or loss resulting from "self destruction (while sane or insane)," "the violation of any law," "or from voluntary exposure to danger." Each of these defenses is set up by the defendant, and in this class of cases the burden is on the defendant to prove the existence of facts which create the exemption.

In ordinary actions for personal injuries the burden is upon the plaintiff to prove his due care, but in an action upon the contract of insurance it devolves upon the defendant to prove the exemption which it sets up in defense. *Keene* v. *New Eng. Acc. Association*, 161 Mass., 149; *Garcelon* v. *Commercial Travelers Association*, 195 Mass., 531.

The defense of suicide was not made out. No such inference could reasonably be drawn from the facts and circumstances as disclosed by the evidence.

The defense of violation of law is based upon R. S., Chap. 57, Sec. 67, which provides as follows: "Whoever, without right, stands or walks on a railroad track or bridge, or passes over such bridge except by railroad conveyance, forfeits not less than five, nor more than twenty dollars, to be recovered by complaint." We will not discuss the application of this statute to the claimed exemption further than we may do so incidentally in connection with the next ground.

The third defense, based on "voluntary exposure to danger" is abundantly proved, and is a full and complete bar to the maintenance of this action.

The material facts are not in controversy. Mr. Archibald and his wife were residents of Poland. On the day of the accident they had come to Lewiston from Portland, arriving in Lewiston shortly before noon. They transacted some business at the Lewiston Trust Company, dined together at a restaurant, and then separated, Archibald going to an employment agency for the purpose of securing men for his lumbering operations. These were obtained and according to the testimony of the agent, Archibald left the agency stating that he had a little business down street and would return about quarter past one, in season to take the men up to the 1.45 P. M. train for Rumford. He was next seen by the gate tender at the Chestnut Street crossing as he was passing that crossing on the tracks, shortly before the accident, and then by the engineer and fireman of the regular 12.40 train out of the Lewiston Lower Station on its way to Brunswick. The train had reached a point several hundred feet from the station and between the Avon and Androscoggin Mills, when the engineer and fireman saw Archibald walking in the same direction in which the train was moving and beside the track. When the engine was within about thirty-five feet from him Archibald, without looking back, started to run across the track, took two or three steps between the rails, threw up his hands, fell and was caught by the pilot. Evidently he was not aware of the approaching train until that moment and then in his confusion, or perhaps with the thought of crossing to a safer position, he was struck and killed. Such in brief are the circumstances attending the accident.

This brings us to the interpretation of the clause, "Voluntary exposure to danger." What is its meaning as used in this contract of indemnity? A definition so accurate in detail and yet so compre-

hensive in scope as to meet all cases is difficult, if not impossible, to formulate, and yet the essential elements can be stated.

The term is not synonymous with lack of due care or contributory negligence.   To give it that broad construction would make of an accident policy a delusive snare.   Many of the accidents of life are attributable to the want of due care on the part of the injured person. They may result from inadvertence, from "thoughtless inattention," and yet they are within the contemplation of the contract.   A mere passive negligence is not sufficient to constitute voluntary exposure to danger.   It must ordinarily be active in its nature.   The word voluntary implies an act of the will.

It may therefore be said, speaking generally, that to render one guilty of voluntary exposure to danger he must have intentionally done some act which reasonable and ordinary prudence would pronounce dangerous, one which an ordinarily prudent man of common intelligence would know to be dangerous.   The term implies both an intention to perform the act and a conscious willingness to take the risk which is obviously connected with it.   The application of this definition to the case at bar brings it clearly within the inhibition.

Mr. Archibald, in walking along the railroad tracks in the city of Lewiston, was voluntarily and unnecessarily walking in an admittedly dangerous place.   The peril was open and plain, his exposure to it was voluntary, and he was injured by the very risk which he had chosen to take.   The precise injury happened which there was reason to fear.   The liability of passing trains was no hidden danger, but an apparent one.   He was in fact a trespasser.   *Copp* v. *Maine Central R. R. Co.*, 100 Maine, 568.   The company itself had posted a sign in that vicinity calling attention to the penalty under R. S., Chap. 57, Sec. 67, for walking, without right, on the track or bridge.   The fact that others were accustomed to take the same course is immaterial in this action against the Insurance Company.   *Piper* v. *Mercantile Mut. Acc. Ass'n*, 161 Mass., 589; *Osgood* v. *U. S. Acc. Co.*, 76 N. H., 475.

In reaching the conclusion that the facts bring this case at bar within the exemption, we are in accord with the authorities which are numerous, and a few of which we cite.   These of course differ in their facts, but they are analogous in principle, and in some of them the clause in the policy would require even stronger evidence against the plaintiff than that under consideration here.   *Cornish* v. *Acc. Ins.*

*Co.*, L. R., 23, Q. B. Div. 453; *Glass* v. *Fraternal Acc. Ass'n*, 112 Fed., 495; *Travellers Ins. Co.* v. *Jones*, 80 Ga., 541; *Small* v. *Travellers Protec. Ass'n*, 118 Ga., 900; *Follis* v. *U. S. Mut. Acc. Ass'n*, 94 Iowa, 435; *Smith* v. *Pref. Mut. Acc. Ass'n.* 104 Mich., 684; *Alter* v. *Union Casualty & Surety Co.*, 108 Mo. App., 169; note to *Hunt* v. *U. S. Acc. Ass'n*, 146 Mich., 521, 10 Ann. Cases, 451; note to *Bakalars* v. *Continental Casualty Co.* 141 Wis., 43, 18 Ann. Cas., 1125; *Tuttle* v. *Travellers Ins. Co.*, 134 Mass., 175; *Willard* v. *Masonic Acc. Ass'n*, 169 Mass., 288; *Garcelon* v. *Commerical Trav. Ass'n*, 195 Mass., 531.

This case is distinguishable from *Keene* v. *N. E. Mutual Acc. Assoc'n*, 161 Mass., 149, confidently relied upon by the plaintiff, as in that case, to quote the opinion, "the deceased was not attempting to walk upon the track or to remain upon it, but he was simply crossing at a quick pace. He was hit, not by an engine with its noise, but by a detached car, which had been kicked along there, the sight of which was cut off by his umbrella." The other Massachusetts cases above cited are more closely in point.

Our conclusion therefore is that the plaintiff cannot recover, and that the request for an ordered verdict for the defendant should have been given.

*Exceptions sustained.*