# CHARLESTON.

## VANCE v. FRANTZ.

Submitted March 12, 1919.   Decided March 25, 1919.

1. MASTER AND SERVANT—*Torts of Servant—Master's Liability.*
   The master is liable for torts committed by his servant in the course of his employment.   (p. 672).

2. TRIAL—*Directed Verdict—Evidence.*
   If the evidence is sufficient to sustain a verdict for plaintiff, in the event the jury should so find, it is error to instruct them to find for defendant.   (p. 672).

Error to Circuit Court, Kanawha County.

Action by Albert Vance against Leo Frantz. Judgment for defendant upon a directed verdict in the intermediate court of Kanawha County, and, from a judgment of the circuit court of that county denying a writ of error, plaintiff brings error.

*Reversed and remanded.*

*J. Howard Hundley,* for plaintiff in error.

WILLIAMS, JUDGE:

By this writ of error plaintiff seeks reversal of a judgment of the circuit court of Kanawha county denying him a writ of error to a judgment for defendant, rendered by the intermediate court of said county, upon a directed verdict in an action for personal injury.

Defendant kept a fruit store, lunch counter and pool room at the corner of Capitol and Dryden Streets in the City of Charleston.  He employed a clerk by the name of Victor Cally, who waited on the customers and collected the fees charged for the use of the pool tables.  Plaintiff swears he went into defendant's place of business one Saturday evening in January, 1918, to get a hot sandwich and, just as he entered the place, Cally ran around to the lunch stand, "grabbed his gun" and shot him with it.  He says he was molesting no one at the time and simply went into the building to get something to eat, as he had often done before.  It appears

from the testimony of other witnesses that a quarrel had occurred back in the pool room, just immediately before the shooting, between Cally and a man by the name of Hampton Legg who, the former claimed, owed him a dime for a game of pool, which the latter denied and refused to pay for. The quarrel culminated in a fight between them in which Frantz, the defendant, and a man by the name of Overstreet also took part. Overstreet says the immediate cause of the fight was Cally's grabbing a half dollar that Legg had placed on the table for the purpose of paying another boy five cents out of it; that after the fight started it was a general mixup and things happened so fast that, as Overstreet says, "(he) didn't have time to find out what happened." This witness admits he struck Cally with a cue before any shot was fired, and that he and Frantz both had hold of the cue, each trying to get it away from the other. About the time the fight began, this witness swears, he heard something said between defendant and Cally and immediately "he (Cally) went about half way back, and he shot again." There is no evidence that plaintiff took any part in the fight, and he himself swears he did not know it was going on when he entered the front room. The shot entered his left arm, he says, and was fired the instant after he entered the room and he immediately ran out; he says he then heard the report of a second shot.

Defendant offered no evidence and, notwithstanding the foregoing testimony is uncontradicted, the court directed the jury to return a verdict for defendant.

Should not the evidence have been allowed to go to the jury? If it is sufficient to support a verdict for plaintiff, if the jury had been permitted to pass on it, and had so found, it follows that the court erred in taking the case from the jury. It is not claimed that defendant committed the act that injured plaintiff. But may he not be liable for the act of his clerk or agent? He kept a place for the accommodation of the public, a place to which they were tacitly invited, and hence defendant was not a trespasser, he had a right to be there. There is no evidence that he was boisterous or disorderly, or that he attempted to take part in the fight; nor is there any evidence that Cally shot in self-defense and acci-

dentally shot plaintiff. Plaintiff swears he was standing near the front door when he was shot, and away from the room where the fight was taking place. Cally was engaged in the regular course of his employment, and got into an altercation and fight over the collection of money due his employer. It is a rule of law that the master is liable for the torts of his servant committed in the course of his employment. *Ash* v. *Century Lumber Co.*, 153 Io. 523; *Dickson* v. *Waldron*, 135 Ind. 507; *Gregory, Admr.* v. *O. R. R. R. Co.*, 37 W. Va. 606; and *Layne* v. *C. & O. Ry. Co.*, 66 W. Va. 607.

Moreover, defendant being present, the jury could very properly infer from the testimony that he was aiding and abetting his servant in the commission of the wrong, for they were both engaged in the fight, and there is no exculpating evidence to justify the act which was the proximate cause of plaintiff's injury. If defendant did aid and encourage his servant Cally, he is just as liable for the wrong as Cally himself is. In that event he would be liable as a principal. *Hunt* v. *Di Bacco*, 69 W. Va. 449.

The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*