# CHARLESTON.

ALPHONSO EGGLESTON *v.* E. M. TANNER *et als.*

Submitted April 20, 1920.   Decided May 4, 1920.

1. MASTER AND SERVANT—*Torts in Course of Employment Actionable.*

   A master is liable for the torts of his servant or agent, committed in the course of his employment   (p. 387).

2. ASSAULT AND BATTERY—*Defendant Assaulting Owner of Car While Attempting to Hold it for Debt of Patient Riding Therein is Liable.*

   A doctor, who notifies his patient that he intends to hold an automobile in which the patient was riding, until he pays his bill for professional services, just previously rendered in dressing a wound, and who immediately sends for an officer, who does actually hold such car without authority and assaults the owner thereof when he demands to see his authority, and injures him without further provocation, is liable for such assault.   (p. 387).

   (LYNCH, JUDGE, absent).

Error to Circuit Court, Mercer County.

Trespass on the case for assault and battery by Alphonso Eggleston against E. M. Tanner and others.   Judgment for defendant Tanner on a directed verdict, and plaintiff brings error.

*Reversed and remanded.*

*Ritz & Kee,* for plaintiff in error.

*McClaugherty, Scott & Richardson,* for defendant in error.

WILLIAMS, PRESIDENT:

To a judgment for one of the defendants, E. M. Tanner, rendered on a verdict directed in his favor, in an action of

trespass on the case for assault and battery, plaintiff prosecutes this writ of error.

Plaintiff, Alphonso Eggleston, operated an automobile in the city of Bluefield and carried passengers for hire. On the 28th of June, 1919, he carried some passengers from Bluefield, W. Va. to Pocahontas, Va. and return. On the return trip one of the party, Ballard Campbell, was struck on the head with a rock and had one of his fingers cut off, and at his request plaintiff took him to a doctor to have his wound dressed. There were two car loads in the party, and this injury occurred on the return trip early on the morning of the following day, in the front car, driven by a man named Robinson, who, at the time, had stopped his car and was out on the ground fixing his lights. When plaintiff came up where the front car had stopped, Campbell asked him to rush him to a doctor, and he took him in the car he was driving and carried him to Dr. Tanner's house, in the town of Simmons, a short distance from the place where the injury occurred. Doctor Tanner got in the car with them and they drove to his office, and Campbell's wound was dressed. When plaintiff had delivered Campbell to the doctor's office, he went to a gasoline station to get some gasoline, according to his testimony and left instructions for the driver of the other car to come by the doctor's office and pick up Campbell. In the meantime Campbell's wound was dressed and the doctor's bill not being paid, he told Campbell he would hold the car until it was paid, and immediately sent a boy to notify Oscar Bennett, supposed to be an officer. The car driven by Robinson had then been driven up and stopped at the doctor's office and plaintiff had not then returned from the gasoline station. Campbell remarked that the car was not his, that he had nothing to do with it, and says the doctor then asked where the man was who brought him to him, and said he had promised to pay him. Oscar Bennett, who had then appeared upon the scene, said he would hold the car until the doctor's bill was paid. Some one of the party then told plaintiff they were holding his car until Doctor Tanner's bill was paid. He then went to Oscar Bennett and asked him what authority he had for holding his car, and asked him to show him his authority, and he swears Bennett

drew his revolver, saying he would show him his authority, and struck him over the head with it, inflicting a severe scalp wound and felling him to the ground, and struck him once after he had fallen; and that Joe Bennett also struck him on the head with a dinner pail. The assault occurred in the road where the machine was standing, above the doctor's office and about 30 feet away. The testimony is that the doctor was standing on the sidewalk in front of his office, in sight and hearing of all that passed between plaintiff and Oscar Bennett, and saw the assault committed by the latter, but there is no evidence that he said or did anything during that time. There is no evidence that Bennett had a warrant for the arrest of plaintiff, or a writ of attachment to hold the car. He carried plaintiff before a justice whose office was in the same town, where he was held for several hours. In the meantime plaintiff telephoned to Bluefield for a lawyer, and on his arrival plaintiff and his car were released.

The two Bennetts and Dr. Tanner were joined as defendants in the action. At the conclusion of plaintiff's evidence, on motion of Dr. Tanner's counsel, the court excluded the evidence as to him and directed the jury to return a verdict in his favor. This is the error complained of. Plaintiff then took a nonsuit as to the other two defendants. There was no evidence offered by the defendants. The evidence tends to show that Dr. Tanner was the principal and Oscar Bennett his agent in the commission of the wrong. While there is no direct evidence that he counseled or advised the commission of the assault, he told witness Campbell that he woud hold the car until his bill was paid, and immediately sent for Oscar Bennett, presumably, for that purpose. He thereby made Bennett his agent for the purpose of doing what he told Campbell he would do, i. e., hold the car, and is liable for what his agent did in discharging what he had sent for him to do. According to the testimony of plaintiff and his witnesses which is all the evidence offered, Bennett's acts in holding the car, and in arresting plaintiff and carrying him before the justice, were unlawful and without authority, and being done at the instance of Dr. Tanner, as the jury could well infer from the circumstances proven, he would be liable therefor as principal. That a principal is liable for the

torts of his agent committed in the course of his employment is a doctrine too firmly established to require any citation of authorities. It can make no difference whether Bennett was a constable or other police officer, because he was acting without authority, and Dr. Tanner must have known it. It was error not to allow the jury to pass upon the evidence. The case is very similar to *Hunt* v. *Di Bacco et al.,* 69 W. Va. 449, and *Vance* v. *Frantz,* 83 W. Va. 671, 99 S. E. 12, and is governed by the principles therein applied, and by the principle stated in the fifth point of the syllabus in *Layne* v. *C. & O. Ry. Co.,* 66 W. Va. 607. The jury could well infer from the testimony that the court excluded, that Oscar Bennett was the agent or servant of Dr. Tanner to do what was necessary in order to hold plaintiff's car until the doctor's bill was paid. The test of a master's liability for the assaults committed by his servant or agent is, whether the assault was according to his express, or implied authority for doing the act. Dr. Tanner said he was going to hold the car until his bill was paid, and sent for Oscar Bennett immediately. Bennett came and actually held the car, and assaulted plaintiff while he was doing so. The jury, therefore, could very well infer that he was the agent of Dr. Tanner, and had implied authority from him to do what he thought was necessary in discharging his duty to his employer. 2 R. C. L., p. 573; 2 C. J. 534; and numerous cases cited in notes.

We reverse the judgment and remand the cause for a new trial.

*Reversed and remanded.*