# CHARLESTON.

BALTIMORE & OHIO RAILROAD CO. *v.* DELLSLOW COAL CO.
(No. 5161.)
Submitted February 10, 1925.    Decided February 17, 1925.

1. CARRIERS—*Failure by Shipper to Bring Itself Within Exemption from Demurrage Charges on Cars Subject to Car Distribution Rules Renders it Liable to Demurrage Charges Under Tariff Published by Carrier.*

    The evidence in the case at bar shows that the demurrage sued for was on shipments of coal from the defendant's mine and was based upon tariffs issued by the railroad company under the provisions of the Interstate Commerce Act. A clause in the tariff filed, providing for an exemption of coal cars subject to car distribution rules from demurrage charges, is notice to a coal company, and the duty is cast upon said coal company to comply with the terms prescribed by the railroad company, if it desires to avail itself of the benefit of such exemption. A failure on the part of the coal company to take the action necessary on its part to bring itself within such exemption renders it liable to the railroad company for demurrage charges under said tariff. (p. 196).

2. TRIAL—*On Plaintiff's Evidence Prima Facie Entitling it to Recover, Motion to Exclude Plaintiff's Evidence and Direct Verdict for Defendant Should be Refused.*

    A motion to exclude all the plaintiff's evidence and direct a verdict for the defendant should be refused when the plaintiff's evidence *prima facie* entitles it to recover. (p. 200).

Error to Circuit Court, Monongalia County.

Action by the Baltimore & Ohio Railroad Company against the Dellslow Coal Company. From judgment for defendant, plaintiff brings error.

*Reversed.*

*Glasscock & Glasscock,* for plaintiff in error.
*Charles T. Herd* and *Frank P. Corbin,* for defendant in error.

WOODS, JUDGE:

This case involves demurrage accrued on three cars placed empty by the plaintiff railroad company on the siding of the Dellslow Coal Company, at the mine of said coal company, in

November and December, 1920. The demurrage on the three cars was $411.00, plus war tax $12.33, making in all $423.33. Each of these cars was loaded with coal by the Dellslow Coal Company. This amount was reduced to $303.03 by sale of the coal in the third car by the railroad company at request of defendant. At the January term, 1923, the defendant filed a plea of non-assumpsit, and at the October term, 1923, filed a plea of recoupment, and at the January term, following, trial was had before a jury, and at the conclusion of the plaintiff's evidence, the Circuit Court on motion of the defendant, struck out the evidence and directed a verdict for the defendant.

To conform with the provisions of the Interstate Commerce Act, 24 U. S. Statutes at Large 379, c. 104, requiring all charges to be just and reasonable, and forbidding unjust discrimination and undue or unreasonable preference or advantage, the plaintiff company, with certain other railroads, through their agent, adopted and published Demurrage Tariff No. 4-A, which was issued and filed under special permission of the Interstate Commerce Commission, May, 1920. Section B, of Rule 1, reads as follows:

> "The following cars are not subject to these demurrage rules:   (1 and 2 omitted)
> 3.   Empty cars placed for loading coal at coal mines, coal mine sidings, coal washers, or coke at coke ovens, and such cars under load with coal, at such mines, mine sidings, or coal washers, or with coke at coke ovens. This exemption applies only at mines, coal washers and ovens which are subject to car distribution rules in lieu of demurrage rules."

Note that the application of paragraph 3 of the rule, quoted above, is made clear in the last sentence: "This exemption applies only at mines, coal washers and ovens which are subject to car distribution rules in lieu of demurrage rules." This tariff, under the statute, and which was introduced in evidence, was required to be open for inspection to all interested, especially shippers, at all stations. The coal company is charged with notice that unless it brought itself within the car distribution rule of the railroad company it

would not come within the demurrage exemption. The duty was cast upon it to avail itself of such rating through the proper channels provided for by the railroad company.

At the time of this controversy the railroad had certain rules governing the rating of coal mines and car distribution to such mines, which rules were introduced in evidence. Under these rules they required all coal companies to fill out a certain form or questionnaire, Form 2622-A, regarding said mining operation, so that said railroad company could rate them and provide for cars on an equitable basis through the mining areas. As long as defendant company did not execute such form or questionnaire it remained subject to the usual demurrage charges. The theory of the car distribution rules, adopted in different forms by various railroads, is to prevent unreasonable discrimination in the supply of cars. Localities as well as shippers may be prejudiced by unjust discrimination in this regard. In *United States* v. *West Virginia & Northern Railway Company*, 125 Fed. 252, the United States Circuit Court for the Northern District of West Virginia held: "It is the legal duty of a railroad company, in furnishing cars to coal mines along its line, where a limited number only can be supplied, to distribute the same impartially, without unjust discrimination or favoritism; and such distribution should be based on a disinterested and intelligent examination, by experts, of the different mines, and upon a consideration of all the factors which go to make up their capacity, both actual and potential, the most important being the number of workings and their capacity for production, the equipment in use for handling and loading the product being secondary, because it may be readily and quickly increased if necessary to meet the requirements."

Plaintiff offered testimony to prove that the cars loaded by defendant did not come within the exception of paragraph 3 of the rules of the tariff hereinbefore quoted. From the proof it appears that the first car was placed on November 15, 1920, on the siding at the Dellslow Coal Company mine, and released November 18, 1920, the demurrage and war tax being $4.12. The second car was placed November 27, and released December 1, 1920, the demurrage and war tax

being $4.12. These cars were released without the demurrage and war tax being paid, the coal company challenging the right of the railroad company to charge demurrage. Mrs. Cobun, who did the clerical work for her husband, the agent in the railroad company's office at Dellslow, explains the condition of their release as follows:

> "I said I was going to let a couple of those cars go out and see what the company said about it and if they went out without demurrage, and then the company notified me I would have to add demurrage to them, and of course if there was demurrage on the first two cars there would be on the next one. * * * And so under the circumstances I let the cars slip. I told them I would mark them up without demurrage rules and would expect them to make it right."

Counsel for coal company argues that by reason of this action on the part of the railroad company it was misled and given reason to believe that demurrage would not be charged in the future. The testimony of Mrs. Cobun, which is admitted to be true, on motion to direct verdict, defeats this contention. Even had Mrs. Cobun assured the coal company that demurrage would not be charged, the railroad company would not be precluded from a recovery. "The duly filed tariff of the carrier must be charged by it and paid by the shipper without deviation therefrom. * * * Neither the misquotation of rates or ignorance is an excuse for charging or paying less or more than the filed rate." *Louisville & Nashville Ry. Co.* v. *Maxwell,* 237 U. S. 94. It is admitted that the defendant company did not execute form 2622-A, offered in evidence. John Nessner testified that he was supervisor of mine rating for plaintiff company and had been since 1903; that he had charge of the coal distribution account; and that the defendant's mine did not come under the car distribution rule until November 18, 1921, long after this controversy over the demurrage matter had arisen. Mrs. Cobun further testified that she notified Mr. Sapp, the superintendent of defendant company, that said company would have to sign a writing before it would come under the car distri-

.bution rule. The largest item of demurrage, set out in the account of the plaintiff, is for demurrage for the third car placed on the coal company's siding on December 13, 1920, and released March 25, 1921, amounting to $415.09 including war tax. From the plaintiff's evidence it appears that the superintendent of the coal company was notified repeatedly that this car was being held subject to demurrage charges. Mr. Hensel, train master, said:

> "I talked to Mr. Sapp first in the office in Sabar-ton, also talked to Mr. Corbin (attorney for coal company) two or three times over the 'phone and first he said he did not think there should be demur-rage charge, and at one time he said he found it wasn't subject to demurrage, and the third time he talked about billing the car out and paying the de-murrage afterward and I told him the agent could not do it. * * * This was only a short time after the car was placed.
>
> * * * * *
>
> Q. Did you explain to the officials of the Dells-low Coal Company why that company wasn't under car distribution rules?
> A. Yes, due to the fact that the siding wasn't completed. When a mine comes under the car dis-tribution rule, it has a mine rating and is entitled to so many cars per day or week or month.
> Q. How many times would you say you conversed with Mr. Corbin and Mr. Sapp regarding the demur-rage charges on this car?
> A. Two or three times with Mr. Corbin, and Mr. Sapp I could not say, because he was in my office so often."

From the testimony of this witness it appears that all that the Dellslow Coal Company would need to have done in order to save this demurrage charge was to have billed the car out within forty-eight hours after it was loaded, or it would have been permitted to empty it and let it go for-ward.

The coal company, as we have stated, offered no evidence on its own part, relying alone on the plaintiff's witnesses to bring out such facts as would contribute to its defense. One

of the facts stressed is that the railroad company never submitted the blank, form 2622-A, to the coal company that its mine might be rated under the car distribution rules of said railroad company. There is no evidence that the coal company made any request to the railroad to be supplied with this form for execution, or put forth any effort to have their mine so classified. In fact according to the testimony of Mr. Hensel, hereinbefore quoted, the mine was not subject to a rating because the siding was not completed.

The question is raised that the provisions of the Interstate Commerce Act are not in the evidence in this case. The courts take judicial notice of the provisions of that Act. Sec. 4, Chap. 13, Barnes' Code; *Spring* v. *Telegraph Company,* 86 W. Va. 192.

It is clear from Sec. 3, Interstate Commerce Act, *supra,* and the interpretation placed on it by the courts, that the railroad company was required to charge demurrage to the defendant coal company until the mine of said company was put under car distribution rules in order to escape the penalty prescribed by said act for discrimination. I Michie on Carriers, Sec. 342.

Was the court right in striking from the jury the plaintiff's evidence and directing a verdict? A motion to exclude all of plaintiff's evidence and direct a verdict for the defendant should be overruled when the plaintiff's evidence *prima facie* entitles him to recover. *Williamson* v. *Nigh,* 58 W. Va. 629, 53 S. E. 124; *Mulvay* v. *Hanes,* 76 W. Va. 721; *Vance* v. *Frantz,* 83 W. Va. 671. In *Barrett* v. *Andrew,* 81 W. Va. 283, 94 S. E. 144, the court held that even though there is doubt of the right of the plaintiff to recover the trial court cannot direct a verdict against him, if the evidence adduced affords a basis for a verdict in his favor. To the same effect, *Null* v. *Bowman,* 64 W. Va. 224, 61 S. E. 154. We only say that this is a proper case for a jury, and that the court should not have taken it from the jury.

For the foregoing reasons the judgment is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed.*